## 17659

J. Ben HUNTER, Respondent, v. L. L. HYDER, and Waymon J. Wyatt, Appellants

(114 S. E. (2d) 493)

380

*Messrs. John C. Mooneyham,* of Spartanburg, and *Justin A. Bridges,* of Laurens, *for Appellants,*

*Messrs. Blackwell, Sullivan & Wilson,* of Laurens, *for Respondent,*

May 16, 1960.

Moss, Justice.

J. Ben Hunter, the respondent herein, brought this action against L. L. Hyder and Waymon J. Wyatt, the appellants herein, upon a complaint in which he alleged that he was the owner of a tract of land containing 500 acres, more or less, adjoining a tract of land owned by the appellants. The complaint alleged that on the tract of land owned by the respondent there was certain pine and hardwood timber; that the said land had on it suitable fences to enclose the cattle of the respondent, and that certain of the land was open, cleared and properly terraced. The complaint then alleged that the appellants carelessly, recklessly, and in utter disregard of the rights of the respondent, did enter upon the said tract of land and operate implements over the open land and terraces, and did cut and make useless the fences on said land, making it impossible for the respondent to have the cattle enclosed, and did cut and remove pine and hardwood timber therefrom. The respondent instituted this

action to recover actual and punitive damages for the unlawful and willful trespass.

The appellants answered and denied trespassing upon the land of the respondent. It was further alleged that some time after the appellants purchased a tract of land adjoining the respondent's property, that the appellant, Waymon J. Wyatt, disposed of all of his interest in the timber on the land to L. L. Hyder. It is then alleged that L. L. Hyder placed a sawmill on the tract of land owned by the appellants for the purpose of sawing the timber thereon, but "emphatically denies that he, or any of his agents or servants, at any time, ever entered upon any of the lands belonging to or owned by" respondent. The answer further alleged that the appellant Hyder entered into a contract with one Sam Walker to cut the timber on the lands of the appellants, but the said Sam Walker was not his agent or servant in any manner whatsoever, and if he accidentally got over the boundary line of the property owned by the appellants and upon the property of the respondent, that the said acts and doings were unauthorized and unknown to the appellants.

This action came on for trial before Honorable Steve C. Griffith, Judge, and a jury, and resulted in a verdict in favor of the respondent against the appellants for actual and punitive damages. At appropriate stages of the trial, the appellants made motions for a nonsuit and a directed verdict, but such were refused by the trial Judge. This case is before this Court upon exceptions challenging certain rulings of the trial Judge.

The appellants assert that since there were no allegations in the complaint that the alleged trespass was committed by their agents or servants, and there being no evidence that either of the appellants personally trespassed upon the property of the respondent, that the trial Judge should have granted a nonsuit or a directed verdict.

The appellants also assert that the trial Judge committed error in admitting evidence that the trespass charged was

committed by their agents or servants, there being no allegations of such in the complaint. The trial Judge is also charged with error in submitting to the jury the question of whether the trespass was committed by agents and servants of the appellants in the absence of appropriate allegations to that effect in the complaint.

The practical question for decision is whether it is necessary in pleading a cause of action against a master, principal or employer, based upon a tort committed by his servant, agent or employee, to allege that the wrongful act was committed by a servant or agent, or whether it is sufficient to simply allege that the wrong was done by the principal or master.

■ We have held that proper consideration of the pleadings in any cause requires that they be considered as a whole. *Witherspoon v. Stogner*, 182 S. C. 413, 189 S. E. 758. We have also held that pleadings should be liberally construed with a view to doing substantial justice between the parties to the action. *Athanas v. City of Spartanburg*, 196 S. C. 19, 12 S. E. (2d) 39, Section 10-602, 1952 Code of Laws of South Carolina.

We have held in actions *ex contractu* that there is no necessity of alleging that the contract was executed through an agent; in other words, the contract may be pleaded as if it were the contract of the principal without mentioning the agency. *Wagener & Co. v. Kirven*, 56 S. C. 126, 34 S. E. 18; *Carr et al. v. Moragne*, 136 S. C. 218, 131 S. E. 424, 43 A. L. R. 1212.

It has been frequently held that although the complaint in an action *ex delicto* charges the conduct complained of directly against the principal or master, proof that the tortious acts were committed by the servant or agent does not constitute a variance, and evidence that the wrong was committed by an agent or servant is admissible, and will sustain a recovery in favor of the plaintiff. *Saucer v. Willys-Overland, Inc.*, D. C., 49 F. (2d) 385; *Trawick v. Chambliss,*

42 Ga. App. 333, 156 S. E. 268; *Cowan v. Cowan,* 179 N. C. 695, 102 S. E. 613; *Banks v. Watrous,* 134 Conn. 592, 59 A. (2d) 723, 4 A. L. R. (2d) 286. See annotation following this case at 4 A. L. R. (2d) 292.

In our own case of *Richey v. Southern Ry. Co.,* 69 S. C. 387, 48 S. E. 285, it was held that where the complaint alleged negligence by a conductor and his railway company, proof of negligence by other servants is admissible. It appears in the cited case that the plaintiff, an employee of the defendant railroad, sued both the railroad and the conductor of the train, on which the plaintiff was the engineer at the time he was injured. It was contended that the trial Judge committed error, in view of the allegations in the complaint, in permitting a recovery upon proof of the negligence of a servant of the railroad other than the conductor. The Court pointed out, in affirming a judgment for the plaintiff, that the complaint alleged not only negligence on the part of the conductor but also negligence on the part of the defendant railroad.

One of the primary purposes of a complaint is to apprise the opposite party of the nature of the action against him. The complaint should inform the defendant of the matters and things which the plaintiff may attempt to prove against him because without such knowledge the defendant would be unable to prepare his defenses and submit proof thereof at the trial. *McCullough v. The American Workmen,* 200 S. C. 84, 20 S. E. (2d) 640. It is also a familiar principle that what is essential to be proved is essential to be alleged. *Boling v. Clinton Cotton Mills et al.,* 163 S. C. 13, 161 S. E. 195. However, Section 10-693 of the 1952 Code of Laws of South Carolina, provides that no variance between the allegations in a pleading and the proof shall be deemed material unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. This statute further provides that whenever it shall be alleged that a party has been so misled, that that fact shall be proved to the

satisfaction of the Court, and in what respect he has been misled. The trial Judge held when appellants made a motion for a directed verdict on the ground that the complaint failed to allege that the delicts charged against them were done by their agents or servants, that "As counsel for the defendants frankly admitted, that upon reading of the complaint anybody would know that it wasn't intended to charge that the defendants went out there and did this work personally. * * * Consequently there was no surprise involved." Additionally, it appears that the appellants are not now in position to question the sufficiency of the allegations of the complaint as to whether the delicts were committed by their agents or servants, in view of the allegations of their answer, wherein they denied that their agents and servants, at any time, entered upon any of the lands belonging to or owned by the respondent. Hence, the issue was squarely raised by the pleadings as to whether the agents or servants of the appellants committed the trespass upon the lands of the respondent. The trial Judge confined the evidence to this issue which was made by the pleadings.

In the case of *Brown v. Carolina Midland Ry.*, 67 S. C. 481, 46 S. E. 283, 284, the plaintiff brought an action to recover from the defendant damages resulting from a fire alleged to have originated within the limits of the right of way of the railroad. The defendant appealed from a judgment in favor of the plaintiff, asserting that the trial Judge committed error in holding that the complaint stated a cause of action for the reason, "(b) In that said complaint does not allege that the fire 'originated in consequence of the act of any of the defendant's authorized agents or employes'." The Court affirmed the ruling of the trial Judge, and said:

"The second assignment of error will be found in 'b'. While again, the complaint does not use the very words of the statute, it nevertheless alleges that the fire originated in consequence of the act of the defendant, and this is equivalent to alleging that the fire 'originated in consequence of the act of any of the defendant's authorized agents or employes.'

The act of an authorized agent or employe is the act of the principal. *'Qui facit per alium facit per se'."*

Since the appellants expressly denied in their answer, and affirmatively alleged, that the persons committing the trespass upon the lands of the respondent were not their agents and servants, testimony going to show that this was not in accord with the true facts was properly received, even if offered in advance of evidence of the appellants. The respondent had the right to attack, in advance, any matter in defense set up by the appellants. *Tate v. Mauldin,* 157 S. C. 392, 154 S. E. 431.

We do not think that it is necessary for this Court to determine, in this case, whether the complaint should have alleged that the tort there charged was committed by an agent or servant of the principal or master. We reach this conclusion in view of the fact that the pleadings, as a whole, raised the issue as to whether the delicts charged against the appellants were committed by their agents and servants. We think the trial Judge was correct in overruling the motions of the appellant for a nonsuit and directed verdict on the ground that such should have been granted for the reason that the respondent had failed to allege that the trespass charged had been committed by agents or servants of the appellants. We, likewise, think it was proper for the trial Judge to admit evidence, under the pleadings, that the delicts charged against the appellants had been committed by their agents and servants. It was, of course, proper for the Judge to submit to the jury the question of whether the trespass was committed by the agents and servants of the appellants.

The appellants assert that it was error for the trial Judge to admit in evidence on behalf of the respondent statements made by one Walker, there being no allegation in the complaint that he was the agent or servant of the appellants. We do not think this was error, because we have heretofore held that the question of whether the trespass alleged was committed by an agent or servant of

the appellants was an issue in this case. If Walker was an agent or servant of the appellants, and this was a question of fact to be determined by the jury, his acts, declarations or admissions, within the scope of his agency, was competent evidence against the principals. *Moore v. Dickinson,* 39 S. C. 441, 17 S. E. 998; *Ragsdale v. Southern Ry.,* 72 S. C. 120, 51 S. E. 540; *Tenhet v. Atlantic Coast Line R. Co.,* 82 S. C. 465, 64 S. E. 232; *Rookard v. Atlantic & Charlotte Air Line Ry Co.,* 84 S. C. 190, 65 S. E. 1047, 27 L. R. A., N. S., 435. The exception posing this question is overruled.

The appellants charge that the trial Judge committed error in admitting evidence of an offer of compromise, asserting that the respondent was permitted to testify as to certain statements made by the appellant Wyatt. This Court has held that compromises are favored and evidence of an offer or attempt to compromise or settle a matter in dispute cannot be given in evidence against the party by whom such offer or attempt was made. *Robertson et al. v. Blair & Co.,* 56 S. C. 96, 34 S. E. 11; *Holden v. Cantrell,* 88 S. C. 281, 70 S. E. 815; *Neal v. Clark,* 199 S. C. 316, 19 S. E. (2d) 473. We have reviewed the testimony objected to by the appellants and we conclude, as did the trial Judge, that the testimony did not constitute an offer of compromise. The respondent testified that the appellant Wyatt said "I thought the wood foreman had gotten drunk and had gotten over on it and I wanted to straighten it up." It was further testified that Wyatt said he would get a man who was a timber cruiser to come down to the place and check it over. The foregoing testimony and all other testimony with reference to this question, does not evidence an offer of compromise. Rather, the statements attributed to Wyatt were declarations or admissions against his interest, and we think as such, the evidence was competent. *Lewellyn v. Atlantic Greyhound Corporation,* 204 S. C. 156, 28 S. E. (2d) 673. This exception is overruled.

In case of *Tenhet v. Atlantic Coast Line R. Co.*, 82 S. C. 465, 64 S. E. 232, it appears that an action was brought for the alleged loss of a case of cigars. The plaintiff testified that an agent of the respondent said that his claim had been ordered paid several days ago. Whereupon a Mr. Shepard said "'Go home, and get your money." The claim, however, was not paid and suit was brought. It was contended that the foregoing testimony evidenced an offer of compromise and hence, was inadmissible. This Court, in affirming the judgment of the lower Court, said:

"But it does not appear with certainty that this was a proposition made in the spirit and confidence of negotiation for a compromise, and we cannot assume so. It seems rather to be a statement of a fact that the claim as made had been ordered to be paid, and a direction to the claimant to go and get his money. If it was within the duty of Mr. Shepard to adjust freight claims and communicate with the claimant with reference thereto, his report of the claim as one ordered to be paid was some evidence to be submitted to the jury that the conditions for liability existed. * * *'"

We think that the foregoing testimony was competent as a declaration against interest and as an admission of liability for the trespass committed upon the property of the respondent.

The appellants assert that if any trespass was committed upon the lands of the respondent, such was the act of one Sam Walker, an independent contractor, and for whose acts they are not legally responsible. Appellants say that the Judge committed error in refusing to direct a verdict in their favor on this ground.

This Court has held that,

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work; an independent contractor is not a servant, and there is

no master and servant relation between his servants and the employer or contractee." *Gomillion v. Forsythe et al.,* 218 S. C. 211, 62 S. E. (2d) 297, 304, 53 A. L. R. (2d) 169; *Cooper v. Graham,* 231 S. C. 404, 98 S. E. (2d) 843; *De Berry v. Coker Freight Lines,* 234 S. C. 304, 108 S. E. (2d) 114, 116.

In the last cited case, we said:

" * * * The right or power of control retained by the person for whom the work is being done is uniformly regarded as the essential criterion for determining whether the workman is an employee or an independent contractor."

It is conclusive from the record before us that the respondent owned a tract of land adjoining that of the appellants, and that Sam Walker entered upon this tract of land and operated implements over the open lands and terraces, cutting and making useless some of the fences enclosing said tract of land, and did cut and remove pine and hardwood timber therefrom. There is no dispute that the appellants placed upon their own tract of land a saw mill for the purpose of sawing the timber cut and logged by the said Sam Walker. It is inferable from the testimony that the timber cut and removed from the lands of the respondent was processed at the saw mill of the appellants. It is conclusive that the proceeds from the sale of the lumber sawed at the appellants' mill was received by Wyatt, and after paying therefrom the expenses of the operation of the saw mill, the proceeds were divided equally between the appellants.

It is the position of the appellants that L. L. Hyder contracted with one Sam Walker, a professional timber cutter and logger, to cut and log the timber on the appellants' property for the sum of $16.00 per thousand. It was testified that Walker and his employees worked whenever it suited them; Walker paid his own employees, paid the social security tax on them, furnished his own equipment, carried his own insurance, and neither of the appellants

had anything whatsoever to do with him, except to make payment of the contract price for the cutting of the timber. The appellants testified that they had no control over Walker in the performance of his contract for the cutting and logging of the timber in question.

There is testimony on behalf of the respondent that when the appellants were moving the saw mill onto their premises, that he stopped a truck driver and asked him if he knew where the lines were on the property. This employee of the appellants said that they did; that they had a plat of the property and were going to have the place surveyed. The respondent testified that after the trespass had been committed, he talked to Sam Walker with reference to the cutting of respondent's timber, and as a result of such conversation, the appellants, along with a Mr. Littlefield, came to see him; that they all went to the property and walked over the area from which the timber had been cut. He testified that Wyatt said that he thought the woods foreman had gotten drunk and had gotten over on it and he wanted to straighten it up, and in order to accomplish this, he would get a timber cruiser to come down and check it over. We quote the following from the testimony of the respondent:

"Q. At any time did anybody tell you how much was cut off of that? A. I had a man that—

"Q. I ask you any time did anybody tell you, either Mr. Wyatt or Mr. Hyder, whether or not they did? A. That they did it?

"Q. Yes. A. Yes, sir.

"Q. What did they say, Mr. Hunter? A. Said that they made a mistake and got across the line, thought the woods foreman had gotten drunk.

"Q. How much did they cut? A. Well, they estimated approximately fifteen thousand yards [feet]."

The respondent also testified that he talked with the appellant Wyatt several times over the telephone asking him

to get the fence fixed so that he could put his cattle back in the pastures. Wyatt's answer was that he would get in touch with Hyder and the boys that tore it down and get them to fix it. The respondent testified that Hyder came down and partially repaired the fence. Hyder admitted that he bought the wire and replaced the fence in question and that Sam Walker helped him fix it. It was also testified by the respondent that neither of the appellants, for a long period of time, ever denied responsibility for the cutting of the timber, and that it was during the fourth or fifth conversation that he had with Wyatt that he was told to see Hyder, that he had nothing to do with it. The respondent testified that for a long period of time the appellants never told him that Walker was responsible for the cutting of the timber. The respondent was asked this question: "He said his woods foreman got drunk and went over the line, referring to Walker?" His answer was, "No, sir. Mr. Wyatt is the one that made that statement. Mr. Walker didn't mention it." The respondent testified that at no time during any conversation that he had with the appellants, up until just before this suit was instituted, did they deny having control of the cutting of the timber. With reference to the repair of the fence that was cut or destroyed, the respondent testified as follows:

"Q. I believe you said Mr. Hyder, after the fence was repaired, told you that he had repaired it? A. Yes, sir.

"Q. Whom did you call prior to that about repairing it? A. Mr. Wyatt.

"Q. Who promised to have it repaired? A. Mr. Wyatt said he would get a man."

The appellant Wyatt testified that he delivered a plat to Hyder and Walker and pointed out a rock as a corner and "told them to be sure never to get over nobody's lines." Again he testified "I give them a plat, told them there was a corner. He's supposed to be able to read the plat, not to get over anybody's lines." There is no testimony on the part of the appellants that they ever at any time had the

boundary line surveyed or did they discuss the boundary lines with the respondent.

There is evidence from which the jury could have concluded that the persons cutting the timber on the lands of the respondent were the agents or servants of the appellants. There is evidence from which the jury could have concluded that the trespass upon respondent's land was committed by Sam Walker, an independent contractor. There is also evidence from which the jury could have concluded that the appellants ratified the acts of Sam Walker.

The trial Judge submitted to the jury the question of whether the appellants had ratified the acts of Sam Walker in committing the trespass upon the lands of the respondent. The question of the ratification was properly submitted to the jury, even though ratification was not pled. *Walker et al. v. Peake et al.,* 153 S. C. 257, 150 S. E. 756, 757. In 27 Am. Jur., Independent Contractors, section 37, at page 514, it is said:

"The fact that a wrongdoer is an independent contractor will obviously not preclude recovery from his employer, if it appears that the latter ratified or adopted as his own the particular act which produced the injury in suit".

The trial Judge, in a very able charge, submitted to the jury as a question of fact, whether or not the trespass upon the lands of the respondent had been committed by agents or servants of the appellants. He properly left it to the jury to determine this question. He charged the jury that the appellants could only be liable to the respondent in the event that they found that the trespass had been committed by the agents or servants of the appellants, acting within the scope of their duties.

The trial Judge also submitted to the jury the question of whether the trespass was committed by Sam Walker, an independent contractor. The jury was charged that if they concluded that the trespass was committed by an independent

contractor, then there would be no liability upon the appellants.

We think that there was no error on the part of the trial Judge in refusing the motion of the appellants for a directed verdict on the ground that the trespass was committed by an independent contractor or his employees. The factual situation was such that it was a question for the jury to determine whether the trespass upon the lands of the respondent was committed by an independent contractor or by agents and servants of the appellants. There is evidence in the record from which the jury could have concluded, that the trespass was committed by agents and servants of the appellants.

We call attention to the case of *Abbott v. Sumter Lumber Co.,* 93 S. C. 131, 76 S. E. 146, 151, a case where the facts are somewhat similar to those in the instant case, a contractor employed by the defendant company to cut standing timber, of which it was the grantee, but where certain trees reserved by the grantor were cut, Justice Woods, in discussing the evidence, said:

"There can be no doubt, however, that, if the defendant participated in the trespass, it would be jointly liable with Stack. The evidence is by no means conclusive that it did participate in it by accepting the benefits of it after knowledge that it had been committed. The evidence on this subject was that Watson, the manager of the defendant company, told Mr. Epps that, when he went to the place he found that the trees had been already cut. The testimony left an important question for the jury, whether the defendant had received and used the timber after notice of the trespass or before; for, if it was received even from an independent contractor and converted with knowledge that it had been obtained by a trespass on plaintiff's lands, then I agree with Mr. Justice Hydrick that the defendant would be a participant in the trespass and liable for actual or both actual and punitive damages according to the circumstances.

But, if the defendant received it from an independent contractor, supposing that it was part of the timber conveyed by Dr. Abbott, the defendant would not be a participant in the trespass, and would not be liable as a trespasser for either punitive or actual damages.

"But even if Stack was an independent contractor, and the defendant did not participate in the trespass, the defendant under the facts here appearing, would, nevertheless, be liable for the value of the timber as property of the plaintiff of which it has had the benefit. According to the undisputed proof, the defendant received plaintiff's trees from Stack as if they had been a part of the lot of timber which it acquired under the conveyance from Dr. Abbott. Defendant was to pay Stack $6.00 a thousand for cutting and loading on the cars. Thus the timber on the cars received by the defendant from Stack represented in its hands the $6.00 paid Stack for cutting plus the value of the trees before they were cut. To the extent of the value of the standing trees, therefore, however innocent the defendant may have been, it was enriched by the property of plaintiff delivered to it by Stack, and to the extent of that enrichment the law imputes to it, as an implied contract, the obligation to pay the plaintiff."

The appellants assert that the trial Judge committed error in failing to direct a verdict as to punitiive damages. Under the evidence, it was for the jury to say whether or not the trespass upon the property of the respondent was a willful and deliberate invasion of his rights. *Sanders v. Barnwell Lumber* Co., 113 S. C. 499, 101 S. E. 860. The appellants say that Wyatt went upon this property the day the sawmill was taken down there by Hyder. The respondent testified that when the appellants were moving the sawmill onto their premises that he inquired of the driver of the truck if he knew where the lines were on the property. This employee of the appellants said that they did, that they had a plat of the property and were going to have the place surveyed. If the appellants knew where the property

lines were, and cut, or permitted timber to be cut beyond such lines, the jury could properly find that the trespass was willful and deliberate. In our opinion, there is sufficient evidence in the record to require the submission to the jury of the issue of whether the appellants willfully and deliberately committed the trespass through their agents or servants.

All of the exceptions of the appellants are overruled and the judgment of the lower Court is affirmed.

Affirmed.

STUKES, C. J. and TAYLOR, OXNER and LEGGE, JJ., concur.