18210

Richard Alton WILLIAMS, Respondent, v. PENDLETON MANUFACTURING COMPANY, Appellant

(136 S. E. (2d) 291)

*Messrs. Watkins, Vandiver, Freeman & Kirven,* of Anderson, *for Appellant,*

230

*Messrs. Anderson & Doyle,* of Anderson, *for Respondent,*

May 8, 1964.

Moss, Justice.

Richard Alton Williams, the respondent herein, by his complaint, alleges that on June 23, 1960, the Pendleton Manufacturing Company, the appellant herein, caused certain dyes and poisons to be discharged into Three and Twenty Creek located in Anderson County, South Carolina, thereby causing the waters of said creek to become polluted, poisoned and unfit for consumption by cattle. He further alleges that the said creek flows through property owned by his father and that four cows belonging to the respondent drank water from said stream and immediately thereafter died. It is then alleged that the direct proximate cause of the death of the cattle was the result of their drinking water from said stream which had been polluted and poisoned by the appellant. This action was brought to recover damages for the loss of said cattle.

The appellant, by answer, admitted that on June 23, 1960, and for many years prior thereto, it had discharged spent

industrial dye stuffs into the waters of Three and Twenty Creek but denies that because thereof the water of said creek became polluted, poisoned and unfit for consumption by cattle. It admitted that some cows belonging to the respondent, which may have had access to the waters of the aforesaid creek, died on June 23, 1960.

This case was tried before the Honorable J. B. Pruitt, Presiding Judge of the Tenth Circuit, and a jury. At appropriate stages of the trial the appellant moved for a nonsuit and a directed verdict on the grounds: (1) that there was no evidence from which a reasonable inference could be drawn that the appellant had poisoned the waters of Three and Twenty Creek as charged by the respondent; and (2) there was no evidence that any act or delict of the appellant was the proximate cause of the death of the cows belonging to the respondent. These motions were refused. This case was submitted to the jury and a verdict in favor of the respondent was rendered. After the verdict was returned, the appellant moved for judgment *non obstante veredicto,* or failing in that, for a new trial upon several grounds. The motion was refused and this appeal followed.

The first question for determination is whether the Trial Judge erred in refusing the motions of the appellant for a nonsuit, directed verdict and judgment *non obstante veredicto* and, alternatively for a new trial upon the grounds heretofore stated.

The question of whether or not there was error in refusing the aforesaid motions of the appellant requires us to consider the testimony and the reasonable inferences to be drawn therefrom in a light most favorable to the respondent. If more than one reasonable inference can be drawn from the evidence the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the Court. *Warren v. Watkins Motor Lines,* 242 S. C. 331, 130 S. E. (2d) 896.

The evidence shows that the father of the respondent owns a one hundred and nine acre tract of land which is traversed by Three and Twenty Creek. There is a thirty acre pasture lying on the west side of said creek and the cattle kept in said pasture get their drinking water from said creek. The respondent had five head of cattle in said pasture. The manufacturing plant of the appellant is located about four miles above this pasture.

On June 23, 1960, Guy Williams, the owner of the farm above referred to and the father of the respondent, went to his pasture and found the five cows about three hundred yards from the water of Three and Twenty Creek, four of them were dead and the fifth near death. Dr. Claude Jamison, a veterinarian, was called and he concluded that the cows had died as a result of cyanide poisoning. He treated the surviving cow for cyanide poisoning and this cow recovered.

On June 24, 1960, Dr. Malcolm J. Rattray, a veterinarian, was called to examine the dead cows. He performed a post-mortem on one of the cows and concluded that such cow died from cyanide or nitrate poisoning. He testified that since he found nothing in the stomach of the cow to indicate what caused the poisoning, he inspected the water in Three and Twenty Creek and found that the stream was bluish in color. As to the cause of the death of the cows, he testified:

"Since the animals were pastured within a few feet of the creek, and since cyanide poisoning is very quick in its action, I assume that they must have ingested water or some other material close by that killed them."

"The cause of the death of these cattle was some nitrogenous poisoning. Nitrogenous poisoning is a cyanide or a nitrate or a nitrite."

This witness testified that it was possible that these cattle died because of nitrates which were caused by eating green vegetable matter, such as sorghum, Johnson grass,

corn and those kinds of things, but not common grass. He further testified that he opened the stomach of the cow he examined for any type of plant that might cause cyanide poisoning, but found none therein. This same witness was asked that if spent industrial dye stuff is dumped into a creek, could that produce cyanide poisoning sufficient to cause the death of cattle? To this question, the veterinarian replied:

"Any ammonia, any nitrate, any nitratic acid, or any of those particular things used in dye processes could have caused that kind of—it is the nitrilese part of cyanide that kills cattle, man or any other animal that ingests it, and as a usual thing by-products contain nitrates. That is, not any particular dye, but the washes and the things that go in the dye process, and if those were present in the spent material they admit to, they could have caused death, because it is a chemical process and water is a catalyst."

Russell Brooks, a chemist for the appellant, testified that no cyanides, nitrates or nitrites are ever used in their dyeing process. However, on cross-examination, this witness testified as follows:

"Q. Do you use any ammonia?

"A. Very seldon. Very small amounts.

"Q. You have used ammonia and do use ammonia on occasion, don't you?

"A. Yes, sir.

"Q. And that is a nyacide?

"A. No, it isn't.

"Q. What is it?

"A. It is ammonia hydroxide. It is a hydroxide."

The same chemist was asked if the appellant ever used nitrate acid, to which he replied: "I wouldn't say that we never have used any, but none at that time. We use some occasionally to clean our equipment. A small amount." This witness admitted that "ammonia has nitrates in it, yes."

It is the position of the appellant that there is no direct evidence that it poisoned the waters of Three and Twenty

Creek or committed any act or delict that was the proximate cause of the death of respondent's cows. The appellant urges that the conclusion of the lower Court that the evidence was sufficient to require submission thereof to the jury was to indulge in a series of presumptions in violation of the principle that a presumption may not be mounted upon a presumption.

In *Craig v. Clearwater Mfg. Co.*, 189 S. C. 176, 200 S. E. 765, this Court held that it is a well established rule that a presumption can be legally indulged only when the facts from which the presumption arises are proved by direct evidence, and that one presumption cannot be deduced from another. To hold that a fact inferred or presumed at once becomes an established fact, for the purpose of serving as a base for a further inference or presumption, would be to spin out the chain of presumptions into the regions of the barest conjecture.

In this case, we do not think the rule just cited is applicable for the reason that there is direct and circumstantial evidence from which a reasonable inference could be drawn that the appellant discharged into Three and Twenty Creek poisons which proximately caused the death of respondent's cows. The facts in any given case may be established by circumstantial evidence as well as direct evidence and the right to recover on circumstantial evidence depends upon the reasonable and logical connection such proof establishes between the wrong and the act alleged to have caused it. The burden was upon the respondent in this case to show the existence of such circumstances that would justify the inference that the injury complained of was due to the wrongful act of the appellant. We think that upon consideration of all the evidence in this case, the Trial Judge properly submitted to the jury for their consideration the question of whether the appellant had poisoned the waters of the aforesaid creek and whether such was the proximate cause of the death of the cows of respondent. We think the case was properly submitted to

the jury and the several motions questioning the sufficiency of the evidence in this respect were correctly refused.

The appellant tendered testimony to show the volume of water flowing in Three and Twenty Creek and a test thereof made on June 23, 1959, which was approximately one year prior to the events with which we are here concerned. The Trial Judge sustained an objection to the proffered testimony because there was no showing that the conditions under which the test was made were substantially similar to those with which we are here concerned. There was no error in so holding. *Peagler v. Atlantic C. L. Railroad Co.,* 234 S. C. 140, 107 S. E. (2d) 15, 84 A. L. R. (2d) 794.

The only other question for determination is whether the Trial Judge committed error in his charge to the jury. The part of the charge, to which the appellant took exception, was the provisions of the Water Pollution Act as is contained in Sections 70-101(5) and (7) and 70-120, as now contained in the 1962 Code of laws. The respondent did not charge nor offer any evidence that the appellant had violated the foregoing statutes. However, in charging the aforesaid statutes, the Trial Judge overlooked and did not charge, as is provided in Section 70-138 of the Code, that any causes of action resulting from the violation of the prohibitions contained in the Water Pollution Act inure solely to the State of South Carolina, and was not intended in any way to create new or enlarge existing common law or statutory rights for riparian owners or others. The respondent admitted, when this case was orally argued before this Court, that the Water Pollution Act had no application to the factual situation here existing but takes the position that the aforesaid charge was harmless and not prejudicial to the appellant.

We have held that instructions to the jury should be confined to the issues made by the pleadings and the evidence and an instruction based on an issue not so raised is erroneous. We have also held that sound

legal principles, whether embraced in the decisions of the Court or statutes, should be charged by the Trial Judge only when applicable to the case on trial. *Green v. Bolen,* 237 S. C. 1, 115 S. E. (2d) 667. We have also held that the giving of an erroneous instruction is not reversible error unless the appellant can show that he was injured and prejudiced thereby. *Ellison v. Simmons,* 238 S. C. 364, 120 S. E. (2d) 209.

We cannot escape the conclusion that the Trial Judge committed prejudicial error in charging the provisions of the Water Pollution Act. The jury could have concluded from such charge that any discharge of industrial waste into a stream amounts to unlawful pollution thereof under the aforesaid statutes, thereby rendering the appellant liable in damages for such pollution. This exception of the appellant is sustained.

The appellant excepted to the charge of the Trial Judge relating to the rights and liabilities of riparian owners. The respondent admitted that this charge had no application to the issues involved here but contended that such error was harmless and not prejudicial to the appellant. We deem it unnecessary to pass upon the question raised by this exception in view of our conclusion that this case must be remanded for a new trial. Since the respondent admits the inapplicability of the law with reference to riparian owners, the case can be retried eliminating this issue therefrom.

The judgment of the lower Court is reversed and this case is remanded thereto for a new trial.

Reversed and remanded.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.