18496

H. S. HENDRICKS, Respondent, v. AMERICAN FIRE & CASUALTY COMPANY, Appellant

(148 S. E. (2d) 162)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-
ville, *for Appellant,*

*Messrs. Younts, Reese & Cofield,* of Greenville, *for Respondent,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant, in Reply,*

May 2, 1966:

Moss, Acting Chief Justice:

American Fire & Casualty Company, the appellant herein, issued to H. S. Hendricks, the respondent herein, a comprehensive and collision insurance policy, providing for the payment for loss caused by collision to a 1961 International

Diesel Tractor, subject to a deductible exclusion of $500.00. On October 16, 1964, while this policy was in full force and effect, the tractor was damaged by collision. It is admitted that there was a loss and such was covered by the aforesaid policy.

However, the parties were unable to agree upon the amount of loss and, in due time, the appellant notified the respondent that it demanded an appraisal in accordance with the terms of the policy. The appellant named one appraiser and the insured one, and these two selected an umpire whose duty it was to pass upon any differences that might arise between the appraisers appointed by the parties. This was in accord with the appraisal agreement contained in the policy.

The policy contract setting forth the procedure for the appointment of the appraisers and the umpire, which was complied with in this case, provided:

"* * * The appraisers shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and failing to agree shall submit their difference to the umpire. An award in writing of any two shall determine the amount of loss. * * *"

The two appraisers met and concurred in finding that the actual cash value of the tractor immediately prior to loss was $8,500.00, but the one selected by the insurer appraised the amount of loss, including depreciation and all incidental loss, at $3,392.41, and the one selected by the insured appraised the amount of loss, including depreciation and all incidental loss, at $5,173.21. Thereupon, the said appraisers, having failed to agree, submitted their differences to the umpire and, as a result of said submission, the umpire and the appraiser appointed by the insurer, made an award finding the actual cash value of the tractor to be $8,500.00, and the amount of loss thereof, including depreciation and all incidental loss, to be $3,750.00. The appellant, in accordance with the aforesaid award, tendered to the respondent

$3,250.00, this being the amount of said award less the deductible exclusion. The respondent refused to accept the amount so tendered. Thereupon, he instituted this action against the appellant to recover the sum of $6,500.00, less the deductible exclusion, contending this was the amount of his loss.

The appellant, by its answer, admitted that the respondent had sustained a loss and such was covered by the policy issued by it but asserted as a defense an appraisal conducted in accordance with the provisions of the policy, and that the amount of loss or damage sustained by the respondent, including any depreciation and all incidental loss, was determined to be $3,750.00, which said award was conclusive upon the parties. The appellant consented to the entry of judgment in favor of the respondent for said sum, less the deductible exclusion. The respondent filed a reply to the aforesaid answer, admitting the appraisal but denying its validity upon several grounds, all of which were stricken by the trial judge except paragraph (3) of said reply, which was as follows:

"That the Plaintiff was never notified of any appraisal meeting, was never given an opportunity to present any information to the appraisers as to his actual amount of loss, and in turn, the Defendant is attempting to deny the Plaintiff the right to be heard as to his contentions and position pertaining to Plaintiff's loss."

This case came on for trial before the Honorable James H. Price, Jr., Judge of the Greenville County Court, and a jury. At appropriate stages of the trial, the appellant made motions for a nonsuit and a directed verdict. These motions were overruled and the case submitted to the jury, resulting in a verdict for the respondent in the amount of $6,038.60, which amount was reduced by the sum of $500.00, representing the deductible exclusion. The appellant moved for judgment *non obstante veredicto,* or in the alternative, for a new trial. These motions were denied by the trial Judge and this appeal followed.

The motions of the appellant for a nonsuit, directed verdict, judgment *non obstante veredicto*, and alternatively, for a new trial, were as follows: (1) there was no issue to be submitted to the jury as to notice of the appraisal; and (2) there was no issue to be submitted to the jury as to incompleteness of the appraisal for the reason that incompleteness was not pleaded and the respondent could not avail himself of it; and if incomplete, the appraisal was the result of an honest mistake which was not a basis for avoiding such. In overruling the motions for a nonsuit and a directed verdict, the trial judge held that the parties were bound by the terms of the appraisal, unless it was established either that a complete appraisal could not be made, or that the presence of the respondent or his agent, or notice to him, was necessary in order for a complete appraisal to be made. The trial judge subsequently charged the jury to the same effect and said charge was duly excepted to by the appellant.

In *Miller v. British American Assurance Co.,* 238 S. C. 94, 119 S. E. (2d) 527, we stated that the overwhelming weight of authority sustains the validity of a stipulation in an insurance policy requiring that any difference of opinion as to the amount of loss, shall be submitted to appraisers to be chosen in accordance with the policy provisions. Such stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability for loss to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is valid. Here, the appellant admits liability to the respondent for the damage to his International Tractor, and since the parties failed to agree as to the amount of loss, it was proper for this question to be referred to appraisers to determine such. A proper demand for such appraisal was made in accordance with the provisions of the appraisal clause of the policy. In *Cleveland v. Home Ins. Co.,* 150 S. C. 289, 148 S. E. 49, we held that a mere mistake of judgment on the part of the appraisers cannot and would not vitiate an award, even though the award is

for an inadequate sum. The fact that others might think the amount fixed by the award inadequate can in no way affect it, and, if otherwise valid, it must stand, unless it is shown that there was fraud, actual or implied, or that the appraisers were not impartial.

The first question for determination is whether there were circumstances present in this case requiring that the respondent be notified of the time and place of the meeting of the appraisers and the umpire.

The policy provision with which we are here concerned and the submission of the damaged vehicle to an appraisal did not provide for notice to the parties. On the contrary, the clause was such as to indicate that the appraisers were to proceed informally to fix the amount of the respondent's loss and, if they were unable to agree, to call in an umpire to settle their differences. Many courts have taken the view that the parties are not entitled to notice of the appraisal proceedings, particularly where the policy did not provide for such notice. *Eberhardt v. Federal Ins. Co.,* 14 Ga. App. 340, 80 S. E. 856. The result has been reached by some courts on the ground that an appraisement is not governed by the strict rules applicable to an arbitration. *American Steel Co. v. German-American Fire Ins. Co.,* 3 Cir., 187 F. 730.

In *Cleveland v. Home Ins. Co.,* 150 S. C. 289, 148 S. E. 49, it appears that the court charged the jury that whether it was necessary that notice be given to the interested parties, in order that they might be present at the time of the appraisal, offer testimony as to the loss, depends upon the circumstances of the case, and left it to the jury to say whether or not reasonable notice should have been given in the cited case. In holding that the trial judge committed error in submitting the question of the notice to the jury, this Court said:

"We have carefully examined and considered  *  *  * the authorities cited from other jurisdictions, and are in-

clined to the view, in the agreement with the greater weight of authority, that ordinarily notice is not necessary. We can conceive of cases, however, as suggested by the trial court, where the taking of testimony would be necessary in order to enable the appraisers to correctly determine the loss or damage. For instance, where the appraisers are not experts, or are not familiar with such matters, or where it is evident that the damage was not caused alone by the fire, or where, for any reason, information is necessary, aside from the mere inspection of the damaged building, for the making of a correct and fair estimate of the loss suffered. In any such cases, proper notice to the parties would be necessary in order that they or their representatives might be present to make a statement or to offer testimony, and failure to give notice would vitiate the award made. And, of course, if any of the interested parties should request to be permitted to appear before the appraisers to make a statement or offer evidence with respect to the damage done, a refusal of such request by the appraisers would vitiate any award submitted by them."

Admittedly, the two appraisers and the umpire were experts in the field to which this dispute relates, and brought to the task of reaching a proper appraisal a wealth of specialized knowledge. Being experts, they could rely on their own knowledge or on information acquired through a proper use of such and personal observation or investigation of the damaged motor vehicle.

It appears from the record that the damaged tractor of the respondent was brought to the garage of the International Harvester Company. The appraisers and umpire met at this place and fixed the amount of the damage to the tractor in the amounts heretofore stated. The area of difference between the appraisers was accounted for by the fact that the appraiser for the insurer concluded that the cab could be properly repaired and the appraiser for the insured concluded that the cab should be replaced. It was solely upon

this basis that the appraisers were not in accord as to the amount of loss. Since the two appraisers did not agree, the umpire was called in and he concluded that the tractor could be repaired and the amount of loss was fixed at $3,750.00. The appraiser for the insurer then concurred in this appraisal. The appraiser for the insured stated in his testimony that the cab of the tractor could have been repaired and that he would have made the repairs at the figure arrived at by the umpire and the appraiser for the insurer. He agreed that "it was fairly close appraisal far as the repairs was concerned", but the difference between the figure of $3,750.00 and the estimate made by him came "in the difference in repairing the cab and replacing the cab, the cost cab." This appraiser also testified that the principal point in difference between him and the appraiser for the insurer was whether or not the cab should be repaired or replaced and admitted that this was a point on which honest, competent men might well differ. It was testified by the appraiser for the insurer that the figure of $3,750.00 was an all inclusive figure and was to cover any and all damage to the tractor.

It is the position of the respondent that he should have had notice of the time and place of the meeting of the appraisers and the umpire. He claims that certain items of damage to the tractor were unknown to the appraisers at the time of their appraisal. These included, according to the respondent's testimony a wrecker bill of $12.00, the cost of a tire replacement in the sum of $120.00, and the purchase of a sleeper mattress at a cost of $38.00. It is undisputed in the record that the loss of the tire and mattress was taken into consideration in the award made by the umpire and the insurer's appraiser. Of course, the charge for the wrecker service of $12.00 could not be considered as damage to the tractor and there was no necessity for this item to be appraised.

A careful examination of the record in this case does not disclose that there was any necessity for the appraisers to notify the respondent of the time and

place of the meeting of the appraisers and the umpire in order for them to arrive at a correct estimate of the loss. Exen though the respondent now claims that there was "hidden damage" to the tractor, the presence of the respondent at such meeting would not have been beneficial to the appraisers or the respondent because he did not know of such damage at the time of the appraisal. The "hidden damage", which is now of concern to the respondent, was not discovered until the tractor was actually repaired and this was sometime after the appraisal had been made. In view of the foregoing, it is our conclusion that the trial judge was in error in submitting to the jury the question of whether the respondent was entitled to notice of the time and place of the appraisal.

The final question for determination is whether the court erred in submitting to the jury the question of whether or not a complete appraisal could be made by the appraisers.

The trial judge charged the jury that:

"* * * the plaintiff is bound by the terms of the appraisal, unless it can show by the greater weight of the evidence one or both of two facts. First, that a complete appraisal could not be made in this case; or two, that the presence of Mr. Hendricks or his agent, or notice to him was necessary in order for a complete appraisal to be made. In which event, and only in which event, I will charge you that notice would be necessary, and that would not be notice from the insurance company, but notice from the appraisers. As I say, then, and only in that event, if you determine a complete appraisal could not be made, or that it could only be made by information supplied after notice to Mr. Hendricks or his presence, could you go behind the appraisal and determine whether the appraisal is, or is not, correct."

It is the position of the appellant that the issue of whether a complete appraisal could not be made was not raised by the pleadings. Since no such issue was created by the pleadings,

it is contended that error was committed in submitting this question to the jury.

The answer of the appellant contained new matter constituting a complete defense by way of avoidance to the cause of action set forth in the complaint. Upon the filing of such answer, the appellant, pursuant to Section 10-661 of the Code, filed a motion requiring the respondent to reply to the new matter contained in the answer. Pursuant to an order, granted upon appellant's motion, the respondent did file a reply admitting the appraisal of the damage to his tractor, but denying the validity thereof upon several grounds including paragraph (3) of said reply hereinabove quoted, and asserted in paragraphs (4) and (5) that the appraiser for the insurer and the umpire did not have sufficient information or adequate facts upon which to make a proper appraisal of the damage to the appellant's tractor. These two last paragraphs of the reply were stricken by the trial judge and there was no appeal from such order. It was only in the stricken paragraphs that the incompleteness of the appraisal was alleged.

The primary purpose and object of a pleading is to apprise the opposite party of the issues it will be called upon to meet. A reply is a pleading, specifically provided for in the Code, and is designed to accomplish this purpose. *Williams v. Jefferson Standard Life Ins. Co.,* 181 S. C. 344, 187 S. E. 540, and *Hunter v. Hyder* 236 S. C. 378, 114 S. E. (2d) 493.

We have held that instructions to the jury should be confined to the issues raised by the pleadings and the facts developed by the evidence in support of those issues. In other words, the particular matters to be covered in the instructions depend upon the issues, joined by the pleadings and supported by the evidence. No instruction should be given by the court either on its own motion or at the request of counsel which tenders an issue that is not presented by the pleadings or supported by the evidence,

or which deviates therefrom in any material respect. *Green v. Bolen,* 237 S. C. 1, 115 S. E. (2d) 667, and *Willaims v. Pendleton Mfg. Co.,* 244 S. C. 228, 136 S. E. (2d) 291.

It is our conclusion that the trial judge was in error in submitting to the jury the question of whether or not a complete appraisal could be had. This issue was not tendered by the pleadings.

The judgment of the lower Court is reversed and the case is remanded thereto for entry of judgment in favor of the respondent in the sum of $3,250.00.

Reversed and remanded.

LEWIS, BUSSEY and BRAILSFORD, JJ., and LEGGE, Acting Associate Justice, concur.