1034

Ted Alan McCALL, Appellant v. Alton FINLEY, Jr., and T. Walter
Brashier, Defendants, of whom T. Walter Brashier is Respondent.

(362 S. E. (2d) 26)

Court of Appeals

*Robert M. Ariail,* Greenville, *for appellant.*

*Ray D. Lathan,* Greenville, *for respondent.*

*James H. Cassidy,* Greenville, *for defendants.*

Heard Sept. 16, 1987.

Decided Oct. 26, 1987.

SANDERS, Chief Judge:

Appellant Ted Alan McCall sued Alton Finley, Jr. and respondent T. Walter Brashier for fraud and violations of the Uniform Securities Act. Sections 35-1-10 et seq. to 1590, Code of Laws of South Carolina, 1976, as amended. The Circuit Court granted the motion of Brashier for summary judgment. McCall appeals. We affirm.

## I

McCall first argues that the Circuit Court erred in denying him a continuance of the hearing on the motion for summary judgment.

McCall sought the continuance based on the fact that the grounds for the motion were not stated with particularity by the motion itself and a memorandum which the motion said would be filed setting out the grounds was not served until the day before the hearing.

The Circuit Court denied the continuance but gave McCall ten days after the hearing "to submit any additional evidence on behalf of his client." McCall did not avail himself of this opportunity, and the Circuit Court issued an order

granting the motion for summary judgment. McCall moved "for a reconsideration of the factual and legal conclusion in said Order." The Circuit Court heard arguments of McCall and Brashier on the motion for reconsideration and issued a further order confirming the previous order granting the motion for summary judgment.

McCall argues that reversal is required because the motion for summary judgment did not comply with the particularity requirements of S.C.R. Civ. P. 7(b).

Appellate courts recognize—or at least they should recognize—an overriding rule of civil procedure which says: whatever doesn't make any difference, doesn't matter. *E.g.*, *Cox v. Cox*, 290 S. C. 245, 349 S. E. (2d) 92 (Ct. App. 1986) (appellant has the burden of showing that an error was prejudicial). Consistent with this heretofore unstated rule, McCall must show he was somehow harmed by having been denied a continuance. He has failed to do so. Any error in not granting the continuance was rendered harmless when the Circuit Court allowed additional evidence to be submitted after the hearing on the motion for summary judgment and heard additional arguments at the subsequent hearing on the motion for reconsideration.

## II

McCall further argues that the Circuit Court erred in granting summary judgment on his causes of action for fraud and violation of the Uniform Securities Act.

A motion for summary judgment should be granted forthwith where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. S.C.R. Civ. P. 56(c). The undisputed facts necessary to our decision in the instant case can be summarized as follows.

Finley owned fifty-one percent of the stock in a corporation named Telecastics, and Brashier owned forty-nine percent of the stock. The sole asset of Telecastics was a radio station known far and wide as WMRB. Finley approached Brashier about buying his stock. Brashier agreed to sell the stock for $50,000.

Finley contacted McCall about selling him forty-nine percent of the stock in Telecastics. McCall and Finley agreed

that McCall would buy the stock for $60,000, and they signed a written agreement, styled "Loan and Future Ownership Agreement." This agreement provided that:

1. Mr. McCall will advance a loan to Mr. Finley on this date in the amount of fifteen thousand dollars ($15,000).
2. Mr. Finley will utilize funds to bind the purchase of forty nine percent (49%) of the stock in Telecastics, Inc.
3. Mr. McCall agrees to, by the end of the business day June 7th of this year, to advance to Mr. Finley an additional forty five thousand dollars ($45,000) to be used in securing the sale of the forty nine percent stock in Telecastics, Inc.
4. Mr. Finley agrees to pay, via WMRB Radio, interest on these notes monthly, in the amount that Mr. McCall must remit to the bank originating the loan to him.
5. Mr. Finley agrees to sell to Mr. McCall forty nine percent of the stock in the above mentioned corporation no later than July 15th of this year, or another date mutually agreed to by the two parties involved.
6. Mr. McCall and Mr. Finley agree that all stock-holder investments shall be repaid in the future by WMRB Radio with monthly interest payments made by the company.
7. Mr. McCall agrees to accept the stock in lieu of this personal note for the amounts referred to above.

McCall knew Finley and Brashier owned all of the stock in Telecastics and had been in business together for some time. He assumed Finley was handling the sale for Brashier.

McCall never questioned or investigated the authority of Finley to act for Brashier.

The payment for the stock involved five checks. McCall delivered a $15,000 cashier's check to Finley on the same day the written agreement was signed. Finley immediately negotiated this check, delivered a $10,000 cashier's check to Brashier and retained $5,000. Two days later, McCall delivered two checks to Finley in the amounts of $5,000 and $40,000. These checks were drawn on the personal account of another person and made payable to McCall, who endorsed them to Finley. Finley retained the $5,000 check and endorsed the $40,000 check to Brashier as "Payment in full

f/49% stock in Telecastics." Either Brashier or Finley obtained a cashier's check to replace the $40,000 check, and Brashier deposited both this check and the $10,000 check he had previously received from Finley. McCall had the $15,000 cashier's check made payable to Finley and endorsed the $5,000 check and the $40,000 check to Finley because Finley asked him to make the payments in this way.

Brashier and McCall met for the first time several months later and signed a document styled "Memorandum of Assignment of Stock." This document recited that it embodied a previous oral agreement between them whereby Brashier had agreed to transfer his stock to McCall "in consideration for the sum of Fifty Thousand ($50,000.00) Dollars." McCall told Brashier that he had paid Finley $60,000 for the stock. Brashier responded that he had received $50,000 and McCall would have to talk to Finley about "the rest of it."

Brashier also signed an endorsement on the stock certificates selling, assigning and transferring the stock to McCall "for value received."

### A

The cause of action of McCall for fraud is based on allegations that Finley made certain representations to him which "were false, fraudulent, incomplete and misleading." McCall concedes that Brashier made no such representations but argues that there is an issue of fact as to whether an agency relationship existed between Finley and Brashier.

A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts. *Paramount Fund, Inc. v. Cusaac*, 282 S. C. 497, 319 S. E. (2d) 354 (Ct. App. 1984).

"[I]t is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority." *Justus v. Universal Credit Co.*, 189 S. C. 487, 495, 1 S. E. (2d) 508, 511 (1939). McCall did not ascertain the authority of Finley to act for Brashier.

"The test to determine [actual] agency is whether or not the purported principal has the right to control the conduct of his alleged agent." *Fernander v. Thigpen*, 278 S. C. 140, 144, 293 S. E. (2d) 424, 426 (1982).

There is no evidence that Brashier had the right to control Finley.

To establish apparent agency, a party must prove that the purported principal has represented another to his agent by either affirmative conduct or conscious and voluntary inaction. *Watkins v. Mobil Oil Corp.*, 291 S. C. 62, 352 S. E. (2d) 284 (Ct. App. 1986). There is no evidence that Brashier represented Finley to be his agent by either affirmative conduct or conscious and voluntary inaction. A party must also prove a reliance on the representation of agency by the purported principal and a change of position as a result of such a reliance. *ZIV Television Programs, Inc. v. Associated Grocers, Inc. of South Carolina*, 236 S. C. 448, 114 S. E. (2d) 826 (1960). McCall could not have relied on any representation of agency by Brashier in agreeing to buy the stock because he had no contact with Brashier until several months after he agreed to do so.

## B

Section 35-1-1490 of the Uniform Securities Act provides that any person who:

(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission;

Is liable to the person buying the security from him. . . .

McCall argues that, even though Brashier made no statements to him, he is liable for "omissions to state a material fact."

Section 35-1-1490(2) applies by its terms to persons who sell or offer to sell a security. Finley, not Brashier, sold the stock to McCall. Brashier offered to sell the stock to Finley, not McCall. Nevertheless, McCall argues that, under Section 35-1-20(10)(a) of the Act, the transfer of the stock to him by Brashier was a "sale." This section provides that the terms

" '[s]ale' or 'sell' includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value." We are aware of no South Carolina cases construing this section of the Act for the purpose of deciding when a person who participates in a sale is a "seller."

The Act is similar to the Federal Securities Act of 1933, 15 U.S.C. Section 77a to 77aa (1981). In the absence of South Carolina authority, we look to federal cases for guidance. *Carver v. Blanford*, 288 S. C. 309, 342 S. E. (2d) 406 (1986). Two basic tests may be gleaned from the various federal cases.

The Second and Third Circuits require strict privity, absent scienter or some special relationship, for a person to be a "seller." *See Akerman v. Oryx Communications Inc.*, 810 F. (2d) 336, 344 ( (2d) Cir. 1987) (strict privity absent scienter); *Collins v. Signetics Corp.*, 605 F. (2d) 110, 112 ( (3d) Cir. 1979) (strict privity absent special relationship). Under this test, Brashier is clearly not a "seller."

The Fourth, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits hold generally that a person who is either in privity with the buyer or significantly participates in a sale is a "seller." *See Adalman v. Baker, Watts & Co.*, 807 F. (2d) 359, 363-64 (4th Cir. 1986) and *Stokes v. Lokken*, 644 F. (2d) 779, 785 (8th Cir. 1981) (participation equals substantial factor causing transaction to occur); *Junker v. Crory*, 650 F. (2d) 1349, 1360 (5th Cir. 1981) (persons who are a motivating force behind the sale; direct and proximate causation of buyer's injury); *Davis v. Avco Financial Services, Inc.*, 739 F. (2d) 1057, 1067 (6th Cir. 1984) and *SEC v. Rogers*, 790 F. (2d) 1450, 1456 (9th Cir. 1986) (persons whose acts are necessary to and substantial factor in transaction; direct and proximate causation of buyer's injury); *Foster v. Jesup and Lamont Securities Co., Inc.*, 759 F. (2d) 838, 843-44 (11th Cir. 1985) (participation equals substantial causative factor directly and proximately causing buyer's injury). Even under the more expansive test recognized in these circuits, Brashier is not a "seller." His only participation in the sale of the stock was the transfer of the stock certificate. This purely ministerial act does not constitute significant participation in the sale.

Moreover, the argument of McCall fails even if Brashier is a "seller." Section 35-1-1490(2) imposes liability for "any omission to state a material fact." However, such liability is imposed only where the material fact omitted is "necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." Since Brashier did not make any statements himself and there is no evidence he was aware of any statements made by Finley, he cannot be liable for any omission.

For these reasons, the order of the Circuit Court is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.