THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 William Walker
 & Terri Walker, Appellants,
 v.
 Sandy Pointe
 Homeowners Association, Inc., Toby Britt, Don Wafer and Joey Holbert, Respondents.
 
 
 

Appeal From Anderson County
 Ellis B. Drew, Jr., Master-In-Equity
Unpublished Opinion No.  2010-UP-354
Heard June 8, 2010  Filed July 12, 2010
AFFIRMED

 
 
 
 Randall Scott Hiller, of Greenville, for Appellants.
 Stephen D. Baggett, of Greenwood, for Respondents.
 
 
 

PER CURIAM: William and Terri Walker appeal the trial court's
 ruling upholding the Sandy Pointe Architectural Committee's (Committee)
 rejection of the location they submitted for the building of their house.  We
 affirm.  
FACTS/PROCEDURAL HISTORY
The
 Walkers purchased a lake-front lot in the Sandy Pointe subdivision on December
 20, 1999.  The Walkers' lot is flat at first, rolls down to a small terrace,
 and then drops sharply.  The Sandy Pointe restrictive covenants (Covenants)
 require homeowners to submit plans for improvements to the Committee prior to construction. 
 The Walkers printed from the internet a plan for a house called the Bagwell and
 submitted it to the Committee.  On September 26, 2001, the Committee sent the
 Walkers a memorandum stating the preliminary house plan was approved in
 principle.  It noted final approval was contingent upon further review of
 submitted detailed plans and specifications.  It reminded the Walkers to
 include in their submission of final plans "all necessary specifications,
 drawings, landscaping plans, etc., according to Sandy Pointe covenants and
 bylaws."  The Walkers submitted their application for their house in
 December 2005.  The proposed location of the house was 88 feet from the road. 
 The Covenants require a minimum set-back of 40 feet.  
On
 December 13, 2005, Committee member Tommy Britt informed Mr. Walker by phone
 that the Committee was turning down the plans because of the proposed location
 of the house.  Without consulting the Walkers, their builder contacted the
 members of the Committee and proposed moving the house back an additional 25
 feet rather than 40 feet as desired by the Committee.  The members of the
 Committee advised the builder to place stakes showing the revised location.  
The
 Committee formally gave written notice that it had disapproved the Walkers'
 plans in a letter from its attorney dated January 11, 2006.  The attorney noted
 that while the builder had advised the Committee that he would move the house
 back some 26 feet, no revised plans had been submitted in accordance with the
 Covenants.  
In a
 letter dated January 17, 2006, the Walkers' attorney responded that the Walkers
 had at all times maintained the original proposed location was appropriate and
 any other location was unacceptable.  He stated the Walkers intended to move
 forward with construction of the house at that original location.  He advised
 that he would accept service if the Committee sought injunctive relief.  The
 Sandy Pointe Homeowners' Association (SPHA) and the Committee sent a letter to
 the homeowners explaining the situation and asking the owners to vote on
 whether the SPHA should pursue litigation in this matter.  Although the
 majority of the homeowners voted in favor of litigation, the Board of the SPHA
 did not file a complaint.  Instead, the Walkers brought this action seeking a declaratory
 judgment ordering the Committee to approve and issue a permit for the
 construction of their house and for damages arising from the delay in the
 construction of the house.  
The
 trial court concluded a reasonable basis existed for the Committee's exercise
 of judgment and the decision of the Committee was not arbitrary and bore a
 sufficient relation to Sandy Pointe's general plan of development.  In
 addition, the court rejected the Walkers' argument that the Committee was not
 properly appointed as provided by the Covenants and by-laws of the SPHA.  The
 Walkers filed a motion to reconsider, which the trial court denied.  This
 appeal followed.  
STANDARD OF REVIEW
A
 declaratory judgment action is neither legal nor equitable, but is determined
 by the nature of the underlying issue.  Felts v. Richland County, 303
 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).  An action to enforce restrictive
 covenants is an action in equity.  Buffington v. T.O.E. Enters., 383
 S.C. 388, 393, 680 S.E.2d 289, 291 (2009).  On appeal from an equitable action,
 an appellate court may find facts in accordance with its own view of the
 evidence.  Townes Assocs. v. City of Greenville, 266 S.C. 81, 86, 221
 S.E.2d 773, 775 (1976).  While this standard permits a broad scope of review,
 an appellate court will not disregard the findings of the trial court, which
 saw and heard the witnesses and was in a better position to evaluate their
 credibility.  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237, 391
 S.E.2d 538, 543 (1989).
LAW/ANALYSIS
A. 
 Authority of Committee
The
 Walkers assert the trial court erred in holding the Covenants provided the
 Committee with the authority to reject the proposed location of their house.  We
 disagree.  
A
 restrictive covenant is a voluntary contract between the parties.  Cedar
 Cove Homeowners Ass'n, Inc. v. DiPietro, 368 S.C. 254, 261, 628 S.E.2d 284,
 287 (Ct. App. 2006).  Restrictions on the use of property will be strictly construed
 with all doubts resolved in favor of the free use of the property; however the
 rule of strict construction should not be used to defeat the plain and obvious
 purpose of the restrictive covenants.  Taylor v. Lindsey, 332 S.C. 1, 4,
 498 S.E.2d 862, 864 (1998).  The language of a restrictive covenant is to be
 construed according to the plain and ordinary meaning attributed to it at the
 time of execution.  Taylor, 332 S.C. at 4, 498 S.E.2d at 863. 

 The
 Covenants provide:
 
 No
 improvements shall be erected, placed, altered, or changed on any lot in the
 subdivision until and unless the building plans, specifications and plot plan
 showing the proposed type of constructions, exterior design, and location of
 such improvement have been approved in writing by the Architectural Committee
 as to conformity and harmony with external design and consistence of plan with
 existing improvements on the other lots in the subdivision and as to the
 location of the structure with respect to topography and finished ground
 elevation.  . . .
 

The
 most applicable definition of topography is "the configuration of a
 surface including its relief and the position of its natural and man-made
 features . . . ."  Merriam-Webster's Collegiate Dictionary 1244
 (10th ed. 1993).  Thus, the Covenants give the Committee the right to approve
 the location of a house with respect to the configuration of the land and
 position of natural and man-made features.  We find this provision grants the
 Committee authority over where on a lot a house should be located.
B. 
 Exercise of Authority
The
 Walkers contend the Committee did not properly exercise its authority.  We
 disagree.  
When
 a covenant provides an architectural review board with broad authority for
 approval of improvements, the architectural review board's discretion is
 constrained only by reasonableness and good faith.  River Hills Prop. Owners
 Ass'n, Inc. v. Amato, 326 S.C. 255, 259, 487 S.E.2d 179, 181 (1997).  The
 courts will uphold an architectural review board's rejection of a homeowner's
 improvements based on aesthetic considerations when the board's decision is not
 arbitrary but bears a sufficient relation to the subdivision's general plan of
 development.  Sea Pines Plantation Co. v. Wells, 294 S.C. 266, 271, 363
 S.E.2d 891, 894 (1987).  
In Palmetto
 Dunes Resort v. Brown, 287 S.C. 1, 2, 336 S.E.2d 15, 16 (Ct. App. 1985),
 the covenant granted the architectural review board the discretion to
 disapprove plans for "purely aesthetic considerations."  The
 architectural review board denied approval of house plans because the garage
 overpowered the house.  Id. at 7, 336 S.E.2d at 19.  This court held the
 architectural review board's reasons for disapproval must bear a reasonable
 relation to the other buildings or general plan of development and the board had
 a right to disapprove plans that would mar the general appearance of the
 subdivision and thus diminish the overall quality of the development.  Id. at 8, 336 S.E.2d at 19-20.
The
 Committee disapproved the Walkers' plans because the location of the house was
 too close to the road in comparison to the other houses on that side of the
 road.  The other houses on that side of the road are more in alignment with the
 lake line of the Army Corp of Engineers than the road.  Britt stated that in
 the Walkers' proposed location, the house would have been "way out"
 in front of the other houses and would have been a "sore thumb." Joel
 Herbert, another Committee member, testified that at the proposed location, the
 house would have "just stuck out."  The neighboring homeowners would
 have been looking at the back of the Walkers' house from the front of theirs. 
 Britt explained he believed the Committee was charged with trying to balance
 existing homes and where they were located in reference to the other homes
 around them.  He acknowledged all of the lots in the subdivision were
 different.  
The
 Walkers' builder testified he explained to the Committee it would be extremely
 difficult to build the Walkers' house 40 feet further back because of the steep
 drop-off of the land and the cost would probably be prohibitive.  The builder
 testified moving the house back 25 feet would cost an additional $25,000. 
 However, he did not remember if he told the members about this cost.  He stated
 he would not build the house at the Committee's proposed location because the
 slope would be too great.  
Committee
 members Joel Herbert and Donald Wafer both testified they would have accepted
 the compromise location proposed by the Walkers' builder, but the Walkers never
 filed an application for that location.  Although he acknowledged that moving
 the house back would increase the building cost, Britt stated the Committee was
 never informed what that cost would be.  Britt stated that if the Walkers moved
 the house back an additional 40 feet as proposed by the Committee, it would not
 be affected by the drop-off.  He explained that is why the Committee proposed
 moving the house back only 40 feet rather than 75 feet, which would put the
 Walkers' house in a better alignment with the other houses.  Although the
 Walkers' builder testified that he would not build the particular house chosen
 by the Walkers at the Committee's selected location, other houses on that side
 have been built on a slope.  Many of them have basements.  
We
 find the Committee's decision to deny the Walkers' application was not
 arbitrary and bore a sufficient relation to the subdivision's general plan of
 development.  Although the Covenants dictate a minimum set-back of 40 feet, the
 Committee in its discretion can require a house to be constructed further back
 than that.  An architectural review board's disapproval does not have to be
 grounded upon a violation of a specific restrictive covenant.  River Hills
 Prop. Owners Ass'n, Inc., 326 S.C. at 259, 487 S.E.2d at 181.  Thus, we
 find no error in the trial court upholding the Committee's decision rejecting
 the Walkers' proposed location for their house.  
C. 
 Notice of Committee's decision
The
 Walkers' assert the Committee failed to provide them with written notice of the
 denial of their application in a timely manner.  The Covenants provide:

 Application
 for approval as required herein shall be made to the Architectural Committee
 and at the time of making such application, the building plans, specifications,
 plot plans, and landscaping plans shall be submitted in duplicate.  One copy of
 such plans and specifications will be retained by the committee and the other
 copy will be returned to the applicant with approval or disapproval plainly
 noted thereon.  In the event that the Architectural Committee fails to approve
 or disapprove such plans within thirty (30) days after they have been submitted
 to it, or if no suit to enjoin the erection or alteration of such building or
 improvement has been commenced before such erection or alteration is
 substantially completed, approval of the Architectural Committee will be
 conclusively presumed and this covenant will be deemed to have been fully
 complied with.  

The
 Walkers submitted their application at the beginning of December 2005.  Britt
 called Mr. Walker on December 13, 2005 to inform him the Committee had rejected
 his application due to the proposed location of the house.  The Walkers'
 builder soon thereafter contacted the members of the Committee to propose the
 alternate location.  In a letter dated January 11, 2006, the Committee's
 attorney gave the Walkers official written notice that the Committee had
 disapproved the plans.  The attorney stated one basis for the disapproval was
 the Walkers had failed to provide two sets of plans as required by the
 Covenants.  
The
 Covenants provide the Committee should note its decision on the second set of
 plans submitted with an application.  They require no other written notice. 
 Britt testified the Walkers submitted only one copy of plans.  From the cover
 sheet, it appears they only submitted one copy of the elevation and house plans
 for "Bagwell Place," as well as only one copy of the landscaping plan
 and subdivision map in their application.  Mr. Walker acknowledged he had only
 submitted one copy of the landscaping plan but maintained he had submitted two
 copies of the house plan.[1] 
 We find the Walkers failed to submit two copies of all of the plans in their
 application as required by the Covenants.  As the Walkers failed to provide the
 Committee with two copies, the Committee was unable to provide them with its
 decision noted on the second copy of plans as provided by the Covenants.  It is
 undisputed the Committee provided the Walkers verbal notice of its decision
 within thirty days of the application and also provided written notice through
 its attorney.  We find no error on this issue.
D. 
 Appointment of Members of the Committee
The
 Walkers assert the trial court erred in determining that general compliance was
 all that was required in the appointment of the members of the Committee.  The
 Covenants provide:

 The
 Architectural Committee of said subdivision shall initially be composed of
 David Porter, Robert W. Dorsey and Joel Herbert and one other lot owner chosen
 by the above named.  In the event of a vacancy on the Architectural Committee,
 or the failure or inability of any member to act, the vacancy shall be filled
 by majority vote of the remaining members on said committee.  

At
 the time the Walkers submitted their application to the Committee, the members
 of the Committee were Joel Herbert, Toby Britt, Donald Wafer, and T.J. Fusco. 
 Herbert was one of the original members of the Committee and was named to the
 Committee in the Covenants.  Wafer testified he and Britt volunteered at the
 annual meeting to serve on the Committee.  There is no testimony of when Fusco
 joined the Committee.  The Covenants do not prescribe the technical manner in
 which the remaining members of the Committee were to vote on new members. 
 There is no evidence that the remaining members of the Committee did not vote
 for Wafer, Britt, and Fusco when they joined the Committee.  We find no basis
 for reversal on this issue.  See Weaver v. Recreation Dist., 328
 S.C. 83, 88, 492 S.E.2d 79, 82 (1997) (noting an appealed order comes to the
 appellate court with a presumption of correctness and the burden is on
 appellant to demonstrate reversible error).
E. 
 Failure to Provide Guidelines
The
 Walkers take issue with the Committee's failure to provide the homeowners with
 guidelines to be used in considering applications.  In the spring of 2001, the
 members of the SPHA voted to amend the Covenants to include a provision that
 the homeowners would be provided with a Statement of Understanding listing the
 guidelines used by the Committee when reviewing plans.  The document was to
 "include the requirements necessary to ensure the conformity and harmony
 of homes in the neighborhood."  The Committee, however, has never prepared
 or distributed the guidelines.  The Walkers have offered no evidence the
 Committee's review of their application would have been any different if the
 Committee had created the guidelines.  We find no reversible error on this
 issue.  See McCall v. Finley, 294 S.C. 1, 4, 362 S.E.2d 26, 28
 (Ct. App. 1987) ("[W]hatever doesn't make any difference, doesn't
 matter.").  We find no reversible error.  
F. 
 Vote of Homeowners in Favor of Litigation
The
 Walkers also contend the SPHA acted improperly in sending what they contend to
 be a biased ballot asking the homeowners whether they supported bringing an
 action against the Walkers.  The vote by the members was advisory only.  The
 By-Laws of the SPHA authorize the Board of the SPHA "to bring proceedings
 on behalf of or against the Owners concerning Sandy Pointe, and to defend
 proceedings brought against Sandy Pointe."  The SPHA was authorized to
 defend this action without a vote by the homeowners.  Thus, even if the vote
 were somehow improper, it is irrelevant to our decision.  See Finley,
 294 S.C. at 4, 362 S.E.2d at 28 ("[W]hatever doesn't make any difference,
 doesn't matter.").  We find no reversible error.  
G. 
 Election of Board of Directors
The
 Walkers assert "None of the Defendants could testify that there was a duly
 elected board of directors . . . ."  They fail, however, to direct this
 court's attention to any evidence in the record that would support a finding
 that the SPHA Board of Directors was not duly-elected.  See Weaver,
 328 S.C. at 88, 492 S.E.2d at 82 (noting an appealed order comes to the
 appellate court with a presumption of correctness and the burden is on
 appellant to demonstrate reversible error); McCall v. IKON, 380 S.C.
 649, 660, 670 S.E.2d 695, 701 (Ct. App. 2008) (stating the appellate court is
 "obliged to reverse when error is called to our attention, but we are not
 in the business of figuring out on our own whether error exists").
 Accordingly, we find the Walkers failed to meet their burden of demonstrating
 reversible error.
H. 
 Record Keeping
The
 Walkers claim the HOA and Committee failed to maintain adequate records.  Even
 if this assertion is true, it would make no difference to the court's
 decision.  See Finley, 294 S.C. at 4, 362 S.E.2d at 28 ("[W]hatever
 doesn't make any difference, doesn't matter.").
CONCLUSION
For the
 above stated reasons, the order of the trial court is 
AFFIRMED.
HUFF,
 SHORT, and WILLIAMS, JJ., concur.  

[1] Mr. Walker may have been including the plans he
 had submitted in 2001 for the "Bagwell" home, which he had printed
 off the internet.  The plan he submitted in 2005 was for "Bagwell
 Place," which was a revision of the house the Walkers had originally
 submitted to the Committee.