HINKLE, District Judge,
dissenting:
One appellate court has suggested a rule that all would do well to follow: “whatever doesn’t make any difference, doesn’t matter.” McCall v. Finley, 294 S.C. 1, 362 S.E.2d 26 (App.1987). This case cries out for application of that rule. The majority vacates a sentence and remands for what seems certain to be reimposition of the same sentence based on the same facts. The court does this because it believes the government did not adequately prove facts that the government proffered and the defendant still has not denied. So long as the court’s opinion is read narrowly — as the court apparently intends — little harm will come of the decision. Even so, moving the defendant hundreds of miles for resen-tencing will impose a useless burden on the public, the government, and the defendant himself. Neither side has asked for this. I respectfully dissent.
The basic chronology is undisputed. The defendant Horacio Arroyo-Jaimes illegally entered the United States in 1999. He committed multiple offenses: carrying *851 a concealed weapon and discharging a gun near a public street in 2003 and trafficking in methamphetamine three times in 2005. He served 6 years of a 15-year sentence on the methamphetamine charges. Upon release, he was removed from the United States. This occurred on December 20, 2011.
Mr. Arroyo promptly reentered the United States. He was arrested in Georgia and charged with trafficking in methamphetamine on April 10, 2012, less than 4 months after his removal. As sometimes happens when a person who has been removed is arrested back in the United States, Mr. Arroyo came to the attention of immigration authorities. This federal case resulted. Mr. Arroyo pleaded guilty to reentering the United States after removal.
The presentence report calculated a guideline range of 57 to 71 months. The presentence report accurately reported the April 2012 arrest “for trafficking in more than 200 grams of methamphetamine,” but the report did not further summarize the underlying facts, as a presentence report ordinarily would do. The arrest did not affect the guideline range. The report closed with this statement: “The probation officer has no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines.”
Mr. Arroyo did not serve any objection to this statement. Mr. Arroyo did, however, serve an objection to the guideline calculation. Mr. Arroyo asserted that criminal-history points should not have been assessed on his convictions for carrying a concealed weapon and discharging a gun near a public street, because he was not represented by an attorney and did not validly waive representation. Aware that this would be an issue, the government came to the sentencing hearing prepared to rebut Mr. Arroyo’s assertion. The government presented court records showing that Mr. Arroyo signed a waiver of counsel with an interpreter present. The court overruled the objection. This left the guideline range at 57 to 71 months.
At that point, Mr. Arroyo asked for a downward variance-a sentence below the guideline range on grounds not authorized by the United States Sentencing Guidelines Manual but instead based on the sentencing factors listed in 18 U.S.C. § 3553(a). One of Mr. Arroyo’s assertions was, in effect, that his criminal-history category overstated the seriousness of his actual criminal conduct. Mr. Arroyo presented argument in support of his position, including factual assertions, but introduced no evidence.
Among the factual assertions were some of a kind not meaningfully distinguishable from those later proffered by the government. Mr. Arroyo asserted that his 2005 methamphetamine convictions resulted from “the fact that Mr. Arroyo had agreed to • reside in a house where drugs were stored.” Mr. Arroyo asserted that his convictions for carrying a concealed weapon and discharging a gun near a public street were accompanied by mitigating circumstances: three men were stealing Mr. Arroyo’s car outside a club; Mr. Arroyo confronted the men; security officers did. not understand what was happening because Mr. Arroyo spoke only Spanish; when law enforcement officers arrived, they too could not understand Mr. Arroyo and so allowed the thieves to leave in Mr. Arroyo’s car. Mr. Arroyo showed no hesitation at all in asking for a variance based on facts that were only proffered, not proved.
Mr. Arroyo had given no advance notice of his intent to ask for a below-guideline sentence. That Mr. Arroyo gave no advance notice and made arguments unsup *852 ported by evidence was neither improper nor unusual. Proof is required on disputed factual issues that affect calculation of the guideline range or a defendant’s eligibility for a departure under the Guidelines Manual, but many of the § 3553(a) factors are not susceptible to proof, and a district court often addresses those factors based on the court’s experience and judgment. So far as I am aware, nobody has ever suggested this is improper. Thus, for example, a court may decide whether a sentence would provide adequate deterrence or create unwarranted disparity by applying the court’s own experience and judgment; the parties need not present, and a court need not sit through, expert testimony on these subjects every time the parties take conflicting positions. Similarly, a court may apply its experience and judgment when considering whether a criminal-history category overstates the seriousness of the defendant’s criminal conduct.
A rule requiring evidence on every factual dispute affecting application of the § 3553(a) factors would dramatically change the law. Under existing law, a district court can properly consider a defendant’s allocution; that is why we allow a defendant to allocute. A defendant typically allocutes without being sworn, and the government has no right to cross-examine. If the defendant seems contrite or, in contrast, unrepentant, must the court ignore it? If the defendant in an illegal-reentry case says, “I came back so I could send money home to my spouse and children,” must the court ignore it? If a defendant proffers letters from friends or family or perhaps the defendant’s pastor, must the court ignore them? On the other side, Congress has given a victim the right to speak at sentencing. The victim need not be sworn, and the defendant has no right to cross-examine. If a victim recounts the harm suffered from the defendant’s crime, must the court ignore it? Under existing law, the answer to all these questions is no. In exercising their sentencing discretion and applying the § 3553(a) factors, district courts routinely consider unsworn inputs. And properly so. Partly in recognition of this, the Sentencing Reform Act precluded appellate review of a district court’s exercise of discretion in imposing a within-guideline sentence. This changed with United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), but not as dramatically as Mr. Arroyo suggests. The Supreme Court has said that a district court need only give a brief, reasoned explanation of its decision. See Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Here the district court easily met that standard.
To be sure, there are limits. The majority cites a case in which the district court concluded, based only an officer’s unreliable (indeed questionable) hearsay testimony, that a defendant committed two murders that the defendant denied committing. See United States v. Reme, 738 F.2d 1156, 1167 (11th Cir.1984). But that is a far cry from facts proffered after an actual arrest with no assertion that the facts are not true.
So existing law gives a district court considerable latitude in applying the § 3553(a) factors. Mr. Arroyo asked the court to exercise that latitude here. Mr. Arroyo allocuted: he said he accepted responsibility, he apologized, and he said he came back to the United States only because of the severe situation in Mexico. Had the district court refused to allow Mr. Arroyo to make these statements, or had the district court refused to consider the statements because they were unsworn, we surely would have vacated the sentence and sent the case back.
*853 Moreover, as set out above, Mr. Arroyo asked the court to impose a below-guideline sentence based partly on proffered facts unsupported by evidence, including facts about prior convictions. The government did not object to Mr. Arroyo’s raising these issues only at sentencing and did not object to the absence of proof. But the government did respond in kind, noting that Mr. Arroyo had been arrested for trafficking methamphetamine fewer than 4 months after his removal, arid proffering the underlying facts — much as Mr. Arroyo had proffered the facts underlying his earlier convictions.
The majority faults the government for not proving the facts of the methamphetamine event. At oral argument in this court, the suggestion was made that the arresting officer could have testified. In its opinion, the majority notes that the government did not even introduce the officer’s affidavit. But the government had no advance notice that the methamphetamine event would be an issue — that Mr. Arroyo would ask for a variance and assert his criminal-history category overstated the seriousness of his actual criminal conduct. No reasonable prosecutor would have subpoenaed an arresting officer to the sentencing hearing under these circumstances. Nor would a reasonable prosecutor have obtained in advance and brought to court the arresting officer’s affidavit.
When the government proffered the facts underlying the arrest — that police found Mr. Arroyo in a bedroom with two bags of methamphetamine, a separate container with more than 200 grams of methamphetamine, and a digital scale — Mr. Arroyo did not deny those facts. (He still has not denied those facts.) Instead, Mr. Arroyo, through his attorney, made a statement that was both self-evident and quite beside the point: “[T]he court legally cannot consider an arrest as a conviction....”
This is beside the point because nobody proposed to treat the arrest as a conviction. In applying the § 3553(a) factors, a court can consider a defendant’s entire background, not just criminal convictions. Conduct that does not result in a conviction (indeed, conduct that is not even illegal) is nonetheless conduct that can properly be considered in determining a sentence. So if Mr. Arroyo was in a bedroom with a large amount of methamphetamine and a digital scale, the court could properly consider it, with or without an arrest or conviction and even ■without information on Mr. Arroyo’s precise role. And the court could consider the government’s uncontroverted proffer, just as Mr. Arroyo had asked the court to consider his proffer of the facts underlying his convictions.
The court considered the submissions and imposed the sentence: 57 months in custody, the low end of the guideline range. The court gave only a brief explanation, but as Rita makes clear, a long explanation for a guideline sentence is not required. The court noted the methamphetamine arrest, precisely as quoted by the majority, but that was not all the court said. The court also said:
[Ijt’s my judgment that under all the facts and circumstances the sentence is a fair and reasonable one considering the sentencing factors set forth in Title 18, U.S.Code, Section 3553(a), specifically the nature and circumstances of the offense, the history and characteristics of the Defendant, the need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law and the need to avoid unwarranted sentencing disparities.
The majority has not criticized this statement, and there is no ground for doing so. The 57-month sentence was reasonable.
*854 After the sentence was imposed, Mr. Arroyo, through his attorney, asserted for the first time that the court lacked a sufficient factual basis for considering the April 2012 methamphetamine event: “I object to the Court’s consideration of an arrest as though it were a conviction and proof that he engaged in the conduct. I don’t believe that the Court has a factual basis to make such a finding, let alone use that finding to justify the sentence imposed in this case.” But Mr. Arroyo again did not deny that the government’s proffer matched up perfectly with the actual facts.
Perhaps at that point, despite having already imposed the sentence, the court should have reopened the record to allow the government to introduce the police report from the methamphetamine arrest (if the government had it in court, despite having received no advance knowledge this would be an issue). Or perhaps the court should have vacated the sentence it had already imposed and continued the case to give the government a chance to present evidence (in response to Mr. Arroyo’s assertion, raised for the first time after the sentence was imposed, that the proffer was insufficient). Vacating the sentence and continuing the hearing at that point — at least if Mr. Arroyo objected, as seems likely in light of his position on this appeal — might itself have been problematic. See 18 U.S.C. § 3582(c) (prohibiting a district court from vacating á sentence of imprisonment “once it has been imposed,” with exceptions not applicable here). And in any event, without so much as a hint that the government’s proffer was not in fact true, I would not fault the court for going forward as it did.
The majority’s response to this dissent is surely correct in some respects. That a sentencing court routinely considers un-sworn inputs, as set out above, does not mean the court may determine a disputed issue of historical fact without a reliable basis. Sometimes the government must prove a disputed fact, sometimes even when the fact is relevant to a defendant’s request for a variance — a subject on which the defendant ordinarily has the burden of proof. But when the defendant gives no advance notice he will ask for a downward variance based in part on his criminal history, and in response the government makes an apparently reliable proffer about the defendant’s criminal history, and the defendant does not deny the proffer’s factual accuracy, it is a stretch to say that considering the proffer violates the Due Process Clause.
Even at oral argument in this court, Mr. Arroyo, through his attorney, did not deny the factual accuracy of the government’s proffer. When asked whether Mr. Arroyo, who is in custody hundreds of miles from the sentencing court, really wishes to be transported back for what seems certain to be reimposition of the same sentence, Mr. Arroyo’s attorney said that is not what Mr. Arroyo seeks. Instead, Mr. Arroyo asks for a resentencing at which the district court is precluded from considering the April 2012 methamphetamine event at all, on the theory that the government had its chance to prove the facts (despite lack of advance notice) and failed to do so. The assertion is plainly unfounded — indeed, not worthy of discussion — and the majority does not even discuss it. But the majority nonetheless remands for resentencing — a result advocated by neither the government nor Mr. Arroyo. Transporting a prisoner hundreds of miles ought not be done without a good reason.
I end where I started: whatever doesn’t make any difference, doesn’t matter. I respectfully dissent.