600 S.E.2d 105

**QHG OF LAKE CITY, INC., d/b/a, Carolinas Hospital System of Lake City, Respondent,**

**v.**

**Karen McCUTCHEON, M.D., Appellant.**

**No. 3839.**

Court of Appeals of South Carolina.

Submitted March 8, 2004.

Decided June 28, 2004.

Rehearing Denied Aug. 19, 2004.

198

Mark A. Brunty, J. Jackson Thomas, both of Myrtle Beach, for Appellant.

A.E. Justice, Jr., James D. Smith, Jr., both of Florence, for Respondent.

CURETON, A.J.

QHG of Lake City, Inc. d/b/a Carolinas Hospital System of Lake City commenced this action against Dr. Karen McCutcheon, alleging she breached an agreement that required her to either practice medicine in the Lake City area or repay loans from the hospital that financed McCutcheon's medical education. McCutcheon appeals the special referee's order awarding judgment and prejudgment interest to QHG based on its claim of quantum meruit. We affirm in part, reverse in part, and remand.

## FACTS

On December 18, 1991, McCutcheon and Lower Florence County Hospital entered into a written agreement whereby the hospital agreed to provide loans to McCutcheon for payment of tuition and fees for her medical school education. Pursuant to this agreement, the hospital would forgive one year of the loans for each year McCutcheon practiced medicine in the Lake City area following her graduation from medical school. In addition to loan forgiveness, the hospital agreed to provide McCutcheon with financial assistance for setting up her medical practice.

From August 1991 to December 1994, County Hospital provided McCutcheon with $31,478.70 in loans for tuition, fees, and books. This amount was given to her over the course of eleven installments. While the first four installments were evidenced by promissory notes, no such instruments were executed for the remaining seven installments.[1] The four notes detail the repayment obligation and accrual of interest in identical language, varying only as to each installment's principal and applicable interest rate. For example, the note dated August 19, 1991, contains the following language:

FOR VALUE RECEIVED, the undersigned promise (s) to pay to Lower Florence County Hospital, or order, the principal sum of Three Thousand Seven Hundred Ninety Five Dollars, with interest from date at the rate of nine and one half (9 ½) per annum on the unpaid balance until paid.

---

1. Although the final seven installments under the agreement were not evidenced by signed promissory notes, neither party disputes their existence.

The said principal and interest shall be payable at the office of Lower Florence County Hospital in Lake City, South Carolina ... payable in sixty (60) days from the date of graduation of the undersigned or sixty (60) days that the undersigned ceases to be a full time student in good standing provided however, this indebtedness shall be deferred and forgiven upon compliance with the agreement between undersigned and Lower Florence County Hospital dated August 19, 1991.[2]

In 1995, McCutcheon graduated medical school and began her residency program in Florence with McLeod Family Practice. She left the residency program before completing it and contacted the former administrator of the hospital who had negotiated the agreement with her. McCutcheon indicated that she was ready to begin practicing medicine, but did not feel adequately prepared to practice alone in a hospital setting. Rather, she believed she needed more experience before beginning her own practice and wanted somebody to mentor her or oversee her practice until she gained the necessary experience. Although the hospital offered McCutcheon an opportunity to take over a practice in Timmonsville, South Carolina, McCutcheon declined the offer. Instead, in July 1997, McCutcheon began practicing medicine in Surfside Beach, South Carolina, and has never practiced medicine in the Lake City area.

On August 6, 1999, QHG brought suit against McCutcheon, asserting causes of action for breach of contract and quantum meruit. The parties agreed to refer the case to a special referee solely under the theory of quantum meruit. After a hearing, the special referee issued an order on February 16, 2002, awarding judgment to QHG in the amount of $31,478.70 for the outstanding principal, plus prejudgment interest in the amount of $23,314.43.[3] McCutcheon appeals.

---

2. The December 18, 1991 note covered a principal of $3,160.00 at a rate of 8.5 percent; the August 12, 1992 note covered a principal of $4,125.00 at 6 percent; the December 4, 1992 covered a principal of $3,300.00 at 7 percent.

3. The special referee also awarded QHG attorney fees. Subsequently, McCutcheon filed a motion pursuant to Rule 59(e), SCRCP, in which she challenged the award of attorney fees. By order dated April 12, 2002, the special referee granted McCutcheon's motion, holding QHG

## STANDARD OF REVIEW

■ In an action in equity tried by the judge alone, this Court can make findings of facts in accordance with our own view of the preponderance of the evidence. However, this does not require us to ignore the fact that the special referee was in a better position to assess the credibility of witnesses. *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989); *see Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 262 n. 1, 440 S.E.2d 129, 131 n. 1 (1994) (holding Supreme Court had jurisdiction to find facts in accordance with its own view of the preponderance of evidence in subcontractor's action against project owner seeking recovery under equitable doctrine of quantum meruit rather than recovery based on contract).

## DISCUSSION

### I. Quantum Meruit

McCutcheon argues the special referee erred in finding that QHG was entitled to relief based on its quantum meruit claim.

■ "In a law action, the measure of damages is determined by the parties' agreement, while in equity, 'the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff.' " *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8, 532 S.E.2d 868, 872 (2000) (quoting *United States Rubber Prods., Inc. v. Town of Batesburg*, 183 S.C. 49, 55, 190 S.E. 120, 126 (1937)). "[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy." *Id.* at 8, 532 S.E.2d at 872.

■■ The equitable doctrine of quantum meruit allows an aggrieved party to recover for unjust enrichment. *Columbia Wholesale Co.*, 312 S.C. at 261, 440 S.E.2d at 130. To prevail on this theory, a plaintiff must establish the following three

was not entitled to attorney fees given there was no contractual basis for the award. There is, however, no issue before us on appeal regarding attorney fees.

elements: (1) a benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for her to retain it without paying its value. *Myrtle Beach Hosp., Inc.,* 341 S.C. at 8–9, 532 S.E.2d at 872.

## A.

█ McCutcheon contends that QHG has not satisfied the first element of quantum meruit because she never entered into an agreement with that entity. Rather, McCutcheon asserts her agreement was with Lower Florence County Hospital, and it was that entity and not QHG that provided her with the medical school loans.[4]

Because McCutcheon makes this argument for the first time on appeal, it has not been properly preserved for our review. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Hubbard v. Rowe,* 192 S.C. 12, 17, 5 S.E.2d 187, 189 (1939) ("In matters of appeal, so far as it appears, all that this Court has ever required is that the questions presented for its decision must first have been fairly and properly raised in the lower Court and passed upon by that Court.").

## B.

█ McCutcheon next asserts that the third element of quantum meruit has not been satisfied "[b]ecause QHG changed the agreement between Lower Florence County Hospital and Dr. McCutcheon and prevented her from fulfilling the agreement as it was contemplated in 1991." Specifically, McCutcheon argues that "[n]ot only did Lower Florence County Hospital have the obligation to set up a practice for Dr. McCutcheon or place her in an established practice, it also

---

4. QHG is an affiliate of the Carolinas Hospital System, which operates several healthcare facilities in South Carolina. In June of 1995, QHG leased the operation of the hospital from Lower Florence County Hospital.

had a duty to ensure her an income." This argument is without merit.

Nothing in the agreement obligated the hospital to provide McCutcheon with employment within the hospital or to secure the same for her elsewhere. The following provision from the agreement details the full extent of the hospital's obligation to McCutcheon insofar as the establishment of her medical practice is concerned:

Upon completion of Internship or Residency, HOSPITAL agrees to provide Physician certain financial aids to establish her medical practice. The scope of such aid will be determined by the usual custom at the time of practice opening.

By its very terms, the agreement only promises to provide McCutcheon with financial assistance for setting up her practice. Nowhere does the agreement state or even imply that the hospital promised to establish McCutcheon's medical practice for her, nor does it guarantee her a certain income. Quite the opposite, in detailing the available avenues by which McCutcheon could "fulfill medical practice obligations," the agreement makes clear that the practice of medicine in the Lake City area was how McCutcheon was to fulfill her end of the deal rather than a guarantee made by the hospital. Thus, the hospital neither prevented her from fulfilling her half of the agreement nor engaged in any other inequitable conduct.

Accordingly, we find no error in the special referee's determination that it would be inequitable to allow McCutcheon to retain the benefit of the hospital's funding of her medical education where she did not fulfill her part of the agreement.

## II. Interest

McCutcheon argues the special referee erred in awarding prejudgment interest in this case because prejudgment interest is not available in a cause of action for quantum meruit.

### A.

■ Although our research does not reveal any South Carolina cases that are directly on point, we believe our Supreme Court and this Court have implicitly found that an award of

prejudgment interest is permissible in an action to recover under the theory of quantum meruit.

In *Anderson v. Purvis*, our Supreme Court discussed the rule in equity with respect to the allowance of interest. *Anderson v. Purvis*, 220 S.C. 259, 262, 67 S.E.2d 80, 81 (1951). In discussing several older cases, the Court stated:

'Upon demands bearing interest at law, the Court of Equity is, it seems, bound to allow interest; but where the demand does not bear interest at law, interest will or will not be allowed according to the equity of the case'; and: 'Upon demands not bearing interest at law, equity usually allows interest, but may in its discretion withhold it.' In the late case of *Epworth Orphanage v. Long*, 207 S.C. 384, 36 S.E.2d 37, 50, it was said: 'A wide discretion is vested in the Courts in determining whether interest shall be allowed in equity cases.' And the following is from *Gaskins v. Bonfils*, 10 Cir., 79 F.2d 352, 356: 'A court of equity may, in the exercise of its sound discretion, allow interest upon equitable considerations even though it could not be recovered at law.'

*Anderson*, 220 S.C. at 262–63, 67 S.E.2d at 81 (citations omitted).

In terms of prejudgment interest, the general rule is that it is not recoverable on an unliquidated claim in the absence of agreement or statute. *Builders Transp., Inc. v. South Carolina Property & Cas. Ins. Guar. Ass'n*, 307 S.C. 398, 406, 415 S.E.2d 419, 424 (Ct.App.1992). "The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty." *Babb v. Rothrock*, 310 S.C. 350, 353, 426 S.E.2d 789, 791 (1993); *see Builders Transport, Inc.*, 307 S.C. at 406, 415 S.E.2d at 424 ("A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty."). "The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Babb*, 310 S.C. at 353, 426 S.E.2d at 791.

Section 34–31–20(A) of the South Carolina Code of Laws provides the statutory basis for prejudgment interest. This section states: "In all cases of accounts stated and in *all* cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum." S.C.Code Ann. § 34–31–20(A) (1987) (emphasis added).

Because the applicable statute and case law do not exclude the award of prejudgment interest for a claim under the theory of quantum meruit, it appears that our appellate courts have implicitly recognized that such an award is permissible. *See, e.g., Okatie River, L.L.C. v. Southeastern Site Prep, L.L.C,* 353 S.C. 327, 336–37, 577 S.E.2d 468, 473 (Ct.App.2003) (affirming trial court's award of damages and prejudgment interest for recovery under quantum meruit/quasi-contract/implied by law); *Stringer Oil Co. v. Bobo,* 320 S.C. 369, 372, 465 S.E.2d 366, 368 (Ct.App.1995) (implicitly recognizing that prejudgment interest may be awarded pursuant to claim based upon quantum meruit); *Builders Transp., Inc.,* 307 S.C. at 406, 415 S.E.2d at 424 (recognizing general rule that prejudgment interest may be awarded in claims for liquidated amounts).

In light of this precedent, we perceive no basis upon which to deny prejudgment interest in a claim for quantum meruit. Thus, we hold that entitlement to prejudgment interest does not depend upon what theory of recovery a plaintiff chooses to proceed under, but rather, whether or not the measure of recovery is fixed by the conditions existing at the time the claim arose.

Our decision is consistent with other jurisdictions. *See, e.g., Murdock v. Cohen,* 762 P.2d 691, 693 (Colo.Ct.App.1988) (finding attorney entitled to prejudgment interest on quantum meruit claim based on state statutory provision); *Peabody N.E., Inc. v. Town of Marshfield,* 426 Mass. 436, 689 N.E.2d 774, 781–82 (1998) (ruling construction company was entitled to recover damages and prejudgment interest from town based on theory of quantum meruit); *Lucent Technologies, Inc. v. Mid–West Elecs., Inc.,* 49 S.W.3d 236, 247 (Mo.Ct.App. 2001) ("On principle there is no reason for denying interest

when the action is in quantum meruit and the claim is unliquidated in the sense that the amount due is to be measured and determined by the standard of reasonable value of the services." (quoting *Mid–West Eng'g Constr. Co. v. Campagna,* 421 S.W.2d 229, 234 (Mo.1967))); *Ogletree, Deakins, Nash, Smoak & Stewart, P.C. v. Albany Steel, Inc.,* 243 A.D.2d 877, 663 N.Y.S.2d 313, 315 (1997) (holding trial court correctly awarded prejudgment interest on a quantum meruit claim to recover attorney fees given a "quantum meruit action is essentially an action at law, inasmuch as it seeks money damages in the nature of a breach of contract, 'notwithstanding that the rationale underlying such causes of action is fairness and equitable principles in a general rather than a legal sense.' " (quoting *Hudson View II Assocs. v. Gooden,* 222 A.D.2d 163, 644 N.Y.S.2d 512, 516 (1996))); *Compton v. Hastings,* 87 Or.App. 388, 742 P.2d 75, 75–76 (1987) (" 'Prejudgment interest is proper in *quantum meruit* cases if the exact amount owing is ascertained or ascertainable by simple computation or by reference to generally recognized standards and where the time from which interest must run can be ascertained.' " (quoting *Hazelwood Water Dist. v. First Union Management,* 78 Or.App. 226, 715 P.2d 498, 501 (1986))); *Burkholder v. Cherry,* 414 Pa.Super. 432, 607 A.2d 745, 747–48 (1992) (finding prejudgment interest may be awarded where recovery was based on quantum meruit); *Base–Seal, Inc. v. Jefferson County, Texas,* 901 S.W.2d 783, 788 (Tex.App.1995) ("Prejudgment interest is recoverable in a suit on quantum meruit, provided the measure of recovery is fixed by the conditions existing at the time the injury is inflicted."); *but see Modern Builders, Inc. of Tacoma v. Manke,* 27 Wash.App. 86, 615 P.2d 1332, 1339 (1980) ("By its very nature, an award of damages based upon quantum meruit is not liquidated and is not readily ascertainable in the parties' contract. Therefore, prejudgment interest may not be awarded when a labor and materialmen's lien is set by quantum meruit.").

■■■ Turning to the instant case, we find the litigation relates to specific sums of money advanced by one party to another party, and, thus, the measure of recovery is capable of being reduced to a certainty. Accordingly, the special referee properly awarded prejudgment interest to QHG.

## B.

In an alternative argument, McCutcheon contends the special referee's calculation of prejudgment interest was in error. She asserts the special referee should not have used the note interest rates to calculate the advancements evidenced by the promissory notes because QHG waived any contract claim given it proceeded solely under the theory of quantum meruit. Furthermore, McCutcheon claims the prejudgment interest should not have accrued until the agreement was breached.

In determining the amount of interest owed, the special referee calculated interest from the dates on which each of the eleven loan installments were made. For the installments evidenced by promissory notes, the special referee applied the interest rates set forth by the terms of each note. The remaining installments were calculated at the statutory rate of 8.75 percent.

As to the four installments evidenced by promissory notes, McCutcheon's indebtedness to the hospital included not only the original principal amounts, but also the interest that accrued on the notes with each passing day. Because the special referee was determining amounts owed on four duly executed interest-bearing financial instruments, he correctly calculated interest in accordance with each note's terms from their respective dates of execution.

In contrast, the remaining seven loan advancements were not evidenced by promissory notes, and therefore bore no interest through their own effect. Courts are allowed to affix prejudgment interest to obligations to pay money only "from the time when payment is demandable." *Future Group, II v. Nationsbank*, 324 S.C. 89, 101, 478 S.E.2d 45, 51 (1996). Here, payment was not "demandable" before McCutcheon breached the terms of the agreement. Thus, the special referee erred in calculating the accrual of interest from the date of each of the final seven loan advancements. We reverse this portion of the special referee's order and find that prejudgment interest at the statutory rate of 8.75 percent should have accrued from the date of McCutcheon's breach of the agreement. Because the record is unclear as to the exact date that McCutcheon breached the agreement, we remand

for the special referee to determine this date and to calculate prejudgment interest accordingly.

### III. Settlement

Finally, McCutcheon asserts the special referee improperly admitted into evidence a $250.00 check she sent to the hospital in August of 1998. The check, McCutcheon contends, was written as a part of a settlement negotiation and should have been excluded under Rule 408, SCRE.

Because the law favors compromises, our appellate courts have long held that testimony as to negotiations and offers to compromise are inadmissible for proving liability. *Neal v. Clark,* 199 S.C. 316, 19 S.E.2d 473 (1942); *see Hunter v. Hyder,* 236 S.C. 378, 387, 114 S.E.2d 493, 497 (1960) ("This Court has held that compromises are favored and evidence of an offer or attempt to compromise or settle a matter in dispute cannot be given in evidence against the party by whom such offer or attempt was made."). This principle is now codified in Rule 408, SCRE:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Rule 408, SCRE.

In the instant case, nothing in the record suggests McCutcheon and the hospital had ever negotiated anything at the time the check was written or that either party ever disputed whether McCutcheon was bound to repay the loans. As such, rather than sending the check in "an attempt to curb further litigation," the testimony at trial affords only the conclusion that McCutcheon intended the check as her first payment on

the loan. *See Commerce Ctr. of Greenville, Inc. v. W. Powers McElveen & Assocs.*, 347 S.C. 545, 558, 556 S.E.2d 718, 725 (Ct.App.2001) (recognizing correspondence appeared to establish a settlement relationship between the parties given the letters presented "an attempt to curb further litigation"). Nothing in the rule against settlement testimony requires courts to exclude evidence that a party tendered a sum mutually understood to be due. Therefore, the special referee committed no error in admitting McCutcheon's check.

## CONCLUSION

Based on the foregoing, we affirm the special referee's decision awarding QHG judgment and prejudgment interest under the theory of quantum meruit. We also find the special referee committed no error in admitting McCutcheon's check into evidence. Because the prejudgment interest on the seven loan installments not evidenced by promissory notes should have been calculated to accrue from the date of McCutcheon's breach, we reverse this portion of the special referee's order. We remand for the special referee to determine the exact date of the breach and to calculate prejudgment interest accordingly. Therefore, the judgment of the special referee is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and STILWELL, JJ., concur.