748 S.E.2d 795

**BOYKIN CONTRACTING, INC., Respondent,**

v.

**K. Wayne KIRBY d/b/a Carolina Gold Bingo, Appellant.**

Appellate Case No. 2012–209067.

No. 5133.

Court of Appeals of South Carolina.

Heard March 14, 2013.

Decided May 15, 2013.

Withdrawn, Substituted and Refiled Aug. 28, 2013.

---

Edward Wade Mullins, III, and Benjamin C. Bruner, both of Bruner Powell Wall & Mullins, LLC, of Columbia, for Appellant.

Charles Harry McDonald, of Robinson McFadden & Moore, PC, of Columbia, for Respondent.

WILLIAMS, J.

K. Wayne Kirby d/b/a Carolina Gold Bingo (Kirby) appeals the circuit court's order awarding Boykin Contracting, Inc. (BCI) $59,494.31 plus prejudgment interest for electrical work performed by BCI on a bingo establishment in Columbia, South Carolina. Kirby contends BCI failed to prove the requisite elements of quantum meruit, requiring this court to reverse the circuit court's order and remand for entry of judgment in Kirby's favor. We affirm.

**FACTS/PROCEDURAL HISTORY**

BCI is a licensed general and mechanical contracting firm located in West Columbia, South Carolina. BCI performs work both as a general contractor and as a subcontractor. Kirby is the sole shareholder and president of Kirby Enterprises of South Carolina, Inc. (Kirby Enterprises). At times, Kirby Enterprises acted as a promoter for certain bingo operations in South Carolina. As promoter, Kirby Enterprises managed, operated, and conducted bingo sessions for nonprofit organizations.[1] In exchange for these services, Kirby

---

1. Pursuant to section 12–21–3920(4) of the South Carolina Code (Supp. 2012), a promoter is "an individual, corporation, partnership, or organization licensed as a professional solicitor by the Secretary of State who

Enterprises received a portion of the admission fee and a percentage of the bingo operation's net proceeds.

In 2007, New Covenant Church entered into negotiations with Kirby Enterprises for the operation of a bingo parlor (Carolina Gold Bingo). As a result, Kirby executed a lease in 2008 with LN Dentsville Square, LLC, for two suites in a former Winn–Dixie building in Columbia, South Carolina. The 2008 lease listed "Wayne Kirby, d.b.a. Carolina Gold Bingo" as "Tenant."

To conduct the bingo operation, certain upfits and renovations needed to be undertaken. Initially, Hemphill & Associates, Inc. (Hemphill) was the general contractor on the project. Kirby testified he entered into a contract with Hemphill to upfit the space for $316,400. According to Kirby, $25,000 was allotted for electrical work in the contract. After executing the contract, Hemphill applied for a building permit in the amount of $100,000 and listed "Wayne K. Kirby" as the owner on the building permit application. However, Kirby maintained that after beginning the necessary renovations, the funds needed to accomplish the project were insufficient. As a result, Hemphill ceased work on the project in November 2007.

The project lay dormant until April 2008. At that time, Tom Brock (Brock), the vice-president of BCI and project manager for the renovation at issue, contacted Kirby after hearing Kirby needed help to complete the electrical work at the bingo parlor. Kirby and Brock met at the work site on April 8, 2008. During this initial meeting, Brock testified that he informed Kirby significant electrical work needed to be completed, and Kirby had likely overpaid the current electrical contractor, Larry Palmer (Palmer). Kirby requested BCI perform the remaining electrical work under Palmer's direction. Brock testified he emphatically opposed this arrangement and stated he and Kirby agreed BCI would complete the requisite work without Palmer's supervision and would send the bill directly to Kirby. Kirby, on the other hand, testified he thought BCI would be working for Palmer and would be paid from the proceeds of approximately $5,000 that remained

is hired by a nonprofit organization to manage, operate, or conduct the licensee's bingo game."

due to Palmer for the completion of the electrical work. After their meeting, BCI commenced work on the bingo parlor the next day.

During the next month, BCI repaired the wiring in the main panel room located in the rear of the building, installed lighting in the back areas not associated with the main bingo floor, connected twenty rooftop HVAC units, repaired exterior lights on the building and in the parking lot, and repaired some lighting in the Comedy Club, which was adjacent to Carolina Gold Bingo. Upon completion of BCI's work, Kirby secured a certificate of occupancy on June 4, 2008, which listed "Wayne K. Kirby" as the owner. BCI subsequently hand-delivered an invoice on July 31, 2008, to Kirby's place of business, which was addressed to Carolina Gold Bingo[2] in the amount of $73,925.40. Of the amount due, $55,509.46 was allotted to labor and materials.

After receiving no payment for its work, BCI filed a mechanic's lien in the amount of $73,925.40 on October 27, 2008. BCI then filed suit on January 12, 2009, seeking to foreclose on the mechanic's lien. After a one-day bench trial, the circuit court issued an order on December 30, 2011, in which it ruled the parties had no meeting of the minds and, therefore, had no enforceable contract. However, the circuit court held that BCI was entitled to recover the reasonable value of its labor and materials under its quantum meruit claim. Accordingly, the circuit court awarded Boykin $59,494.31[3] plus prejudgment interest and costs in the amount of $160. Kirby filed a Rule 59(e), SCRCP motion to reconsider, which the circuit court denied. This appeal followed.

## ISSUES ON APPEAL

(1) Did the circuit court err in finding BCI could recover from Kirby on its quantum meruit cause of action?

___

2. The circuit court found BCI addressed the invoice to Carolina Gold Bingo because this was the trade name Kirby used for the bingo operation and it was also the trade name Kirby used on the lease for the bingo space.

3. The circuit court deducted the 15% profit BCI built into the project as well as $2,760.29 in credit card charges after finding BCI failed to demonstrate these charges were all incurred for purposes of work on Carolina Gold Bingo.

■ Did the circuit court err in awarding BCI $59,494.31 in damages plus prejudgment interest?

## STANDARD OF REVIEW

■ "[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy." *QHG of Lake City, Inc. v. McCutcheon*, 360 S.C. 196, 202, 600 S.E.2d 105, 108 (Ct.App.2004) (internal quotation marks omitted). As such, an action based on a theory of quantum meruit sounds in equity. *Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994). When reviewing an action in equity, an appellate court reviews the evidence to determine facts in accordance with its own view of the preponderance of the evidence. *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010).

## LAW/ANALYSIS

### I. Quantum Meruit

■ Kirby first contends the circuit court erred in finding BCI conferred a benefit to Kirby in his individual capacity. Specifically, Kirby claims it was reversible error for the circuit court to conclude that Kirby, as opposed to Carolina Gold Bingo or Kirby Enterprises, realized value from any work performed by BCI. We disagree.

■ The elements of a quantum meruit claim are as follows: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value. *Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 617–18, 703 S.E.2d 221, 225 (2010).

In the circuit court's order, it found quantum meruit was an appropriate remedy because, although there was no meeting of the minds as required for an express contract, BCI was still entitled to recover the reasonable value of its labor and materials. We agree and find the circuit court's reasoning persuasive in resolving this issue.

First, BCI conferred a benefit on Kirby individually, and Kirby realized this benefit. Although Kirby did not sign the lease on the bingo space until after the work was completed,

the court held "it [wa]s clear that Wayne Kirby exercised dominion and control over the area designated for his bingo operations well before this time."[4] In support of this conclusion, the circuit court noted Kirby was listed as the "owner" on the building permit application, which was issued *before* BCI started work, and as "owner" on the certificate of occupancy, which was issued *after* BCI completed its work. Although Kirby claims the circuit court improperly relied on these documents because he did not complete these documents or own Carolina Gold Bingo, we find these designations lend support to the court's conclusion he was in fact the intended beneficiary of BCI's work. Moreover, the circuit court acknowledged that Kirby was the point person for all the work. In this capacity, Kirby represented to Brock, BCI's vice-president, that the project was behind schedule and that renovations needed to be completed as soon as possible to prevent substantial financial loss.

On appeal, Kirby attempts to skirt responsibility by claiming that Kirby Enterprises, as opposed to Kirby, retained any benefits from BCI's electrical work. We disagree and find Kirby benefitted in his individual capacity from BCI's work. We find Kirby's argument unpersuasive, particularly when Kirby directed the project, maintained control over the premises, spent significant time on-site, and had a direct personal stake in the success of the venture. Moreover, the circuit court did not need to pierce Kirby Enterprises' corporate veil to hold Kirby individually liable. BCI never argued that Kirby Enterprises was the recipient of its services or attempted to recover against Kirby Enterprises under a corporate veil theory. Rather, it was Kirby who raised the corporate veil theory as a defense to his individual liability.

Kirby further argues that because he did not own Carolina Gold Bingo, any work that enabled Carolina Gold Bingo to open did not directly benefit him. We disagree and find the language of the 2008 leasehold agreement compelling. Specif-

---

4. Based on our review of the record, it appears Kirby signed both the 2007 and 2008 leases. The 2007 lease applied to the entire building (Comedy Club and Carolina Gold Bingo), whereas, the 2008 lease only applied to the bingo parlor. Kirby's name, social security number, driver's license number, and signature appear in the 2007 lease underneath the caption "tenant." When questioned, Kirby affirmed that his name was listed as a tenant in the 2007 lease.

ically, the 2008 lease between LN Dentsville and Kirby, which Kirby signed, lists the tenant as "Wayne Kirby d.b.a. Carolina Gold Bingo."[5]  In contemplation of this tenancy, Kirby took the initiative to hire Hemphill as general contractor over a year prior to the execution of the 2008 lease.  Kirby also possessed keys to the facility and electrical plans for the installation of lighting and power, which he gave to BCI in order to start work on the bingo parlor.

Based on our review of this evidence, we find Kirby personally benefitted from BCI's successful completion of the electrical work.  Because Kirby never paid BCI for the work it undertook to upfit the bingo parlor, we find Kirby was unjustly enriched at BCI's expense.  Accordingly, the circuit court properly found BCI could recover under quantum meruit from Kirby.

## II.  Damages

Next, Kirby claims the circuit court erred in calculating the damages award and in permitting BCI to recover prejudgment interest.  We disagree.

■  The general law is that when, as here, an express contract fails because there is no meeting of the minds as to the essential terms, the laborer or contractor may still recover the reasonable value of the labor and materials furnished under an implied in law or quasi-contractual theory.  *See Costa & Sons Constr. Co. v. Long*, 306 S.C. 465, 468 & n. 1, 412 S.E.2d 450, 452 & n. 1 (Ct.App.1991) (citing 66 Am.Jur.2d *Restitution and Implied Contracts* §§ 7 and 21 (1973)) (stating implied in law or quasi-contracts are not considered contracts at all, but are akin to restitution, which permits recovery of the amount the defendant has benefitted at the expense of the plaintiff in order to preclude unjust enrichment); *Braswell v. Heart of Spartanburg Motel*, 251 S.C. 14, 18, 159 S.E.2d 848, 850 (1968) (finding under the theory of implied

5.  Kirby claims the circuit court erred in finding Carolina Gold Bingo was the trade name he used for the bingo operation.  We find this argument disingenuous, particularly when the 2008 lease agreement, which Kirby signed, lists the tenant as "Wayne Kirby d.b.a. Carolina Gold Bingo" and further lists "tenant's trade name" as "Carolina Gold Bingo."  Kirby presents no evidence that another individual entered into the lease on his behalf or that he attempted to correct this portion of the lease, despite this alleged inaccuracy.

contract, when there is no agreement as to the price to be paid for services, one is entitled to recover the fair or reasonable value of the services rendered); *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8, 532 S.E.2d 868, 872 (2000) ("[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy."). This quasi-contractual right of recovery, also known as quantum meruit, has been defined by Black's Law Dictionary as follows: "1. The reasonable value of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship. 2. A claim or right of action for the reasonable value of services rendered." Black's Law Dictionary 1006 (7th ed.2000).

Our courts have also held that in "an action in quasi-contract, the measure of recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff." *Stringer Oil Co. v. Bobo*, 320 S.C. 369, 372, 465 S.E.2d 366, 369 (Ct.App.1995); *see also Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 333, 730 S.E.2d 282, 287 (2012) (Toal, C.J., concurring in result in part and dissenting in part) (citing *Stringer*, 320 S.C. at 372–73, 465 S.E.2d at 368–69) (stating "[t]he proper measure of damages for an unjust enrichment claim is the amount of increase in the fair market value of the subject property due to the improvements made by the plaintiff").

██ As to damages, Kirby contends the circuit court improperly calculated BCI's damages based on the reasonable value of BCI's labor and materials. Relying on *Stringer Oil*, Kirby contends the court should have measured BCI's damages by determining, from Kirby's perspective, the value he received from BCI's work. We agree that the appropriate measure of recovery is expressed by the amount the defendant has been unjustly enriched at the expense of the plaintiff, but in the instant case, we find this to be Boykin's costs in completing the project.

We take a moment to clarify why we choose not to apply the measure of damages advocated by Kirby from *Stringer Oil*. In that case, Stringer Oil, a gasoline distributor, sued Alton Bobo, a gasoline station owner, claiming that it made over $100,000 in improvements to the gas station with Bobo's

express assurance that he would exclusively purchase gasoline from Stringer Oil. *Stringer Oil*, 320 S.C. at 371, 465 S.E.2d at 368. This court found Stringer Oil was only entitled to $40,000 in damages, which Bobo testified was the value of the improvements to him at the time the parties ceased doing business. *Id.* at 374, 465 S.E.2d at 369. Because Stringer Oil failed to present any competing evidence on damages, this court found that Bobo, as the owner of the gas station, was competent to present evidence on the issue of damages. *Id.*

We find this case, and thus the appropriate measure of damages, distinguishable in several respects. First, the damages in this case are liquidated; the damages in *Stringer Oil* were unliquidated. *Id.* at 372, 465 S.E.2d at 368. BCI and Kirby had a *quid pro quo* agreement that BCI would perform certain work in exchange for payment of those services. In *Stringer Oil*, however, the improvements to the gas station were made without expectation of repayment; rather, the expectation was that Bobo would continue to buy gasoline from Stringer Oil. *Id.* at 371, 465 S.E.2d at 368. In addition, Boykin does not own the property on which Carolina Gold Bingo is located, whereas Bobo owned the gasoline station which benefited from Stringer Oil's improvements. *Id.* As a result, we are not persuaded that BCI's claim should be measured by the extent to which BCI's work increased the value of the property.

■ Without any competent evidence to the contrary, we find it proper to defer to the circuit court's calculation of damages. *See Stringer Oil*, 320 S.C. at 374, 465 S.E.2d at 369 (calculating damages on appeal based on the only competent evidence presented to master-in-equity). As reflected in BCI's invoice, BCI sought $73,925.40 [6] from Kirby for the electrical work. The circuit court reviewed BCI's job cost analysis, which calculated the costs for the project at $62,254.60, as well as BCI's invoice to Kirby.[7] From the amount owed, the circuit court deducted the 15% profit BCI built into the project as well as $2,760.29 in credit card

---

6. This figure included material, labor, taxes, insurance, overhead, and profit.

7. Kirby contends that if we conclude the proper measure of damages is BCI's labor and materials, the circuit court improperly calculated BCI's

charges that BCI failed to prove were directly attributable to work on the bingo parlor.

After accounting for these deductions, the circuit court awarded $59,494.31 to BCI. The circuit court acknowledged Kirby's belief that BCI would only be paid from the remaining proceeds due to Palmer, which totaled approximately $5,000. However, the circuit court discredited this testimony based on the evidence presented to the court, which demonstrated BCI performed significant electrical work. We find this amount to be fair and reasonable and within the circuit court's discretion based on the evidence presented by the parties. *See Braswell,* 251 S.C. at 18, 159 S.E.2d at 850 (1968) (finding that under the theory of implied contract, when there is no agreement as to the price to be paid for services, one is entitled to recover the fair or reasonable value of the services rendered).

■ Kirby also claims the circuit court improperly awarded BCI prejudgment interest. We disagree.

■ The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable and the sum is certain or capable of being reduced to certainty. *Babb v. Rothrock,* 310 S.C. 350, 353, 426 S.E.2d 789, 791 (1993). The fact that the sum due is disputed does not render the claim unliquidated for purposes of an award of prejudgment interest. *Id.* Further, the circuit court has the discretion to award prejudgment interest in an action to recover under the theory of quantum meruit. *See McCutcheon,* 360 S.C. at 206, 600 S.E.2d at 110 (finding the entitlement to prejudgment interest proper in a quantum meruit claim). The proper test for determining whether prejudgment interest may be awarded in a quantum meruit claim is whether the

---

labor and material costs. We disagree and note that although the invoice denotes the labor and materials as $55,509.46, whereas the job cost analysis denotes BCI's labor and materials as $62,254.60, both of these documents were in evidence and considered by the circuit court. The circuit court specifically held in its order that it based its calculation on the "job cost total" as opposed to the invoice. Because the damages award was within the range of evidence presented to the court, we defer to the circuit court's calculation. *See Hawkins v. Greenwood Develop. Corp.,* 328 S.C. 585, 601, 493 S.E.2d 875, 883 (Ct.App.1997) (finding damages award was proper because it was within range of evidence presented during trial).

measure of recovery is fixed by conditions existing at the time the claim arose. *Id.*

We find the circuit court properly awarded prejudgment interest because the amount owed to BCI was "capable of being reduced to a sum certain." In addition, the measure of recovery was fixed by conditions existing at the time BCI's claim arose against Kirby as the costs incurred by BCI at the time of the work were established by BCI's invoices. Kirby's disagreement with BCI over the amount due for the work does not preclude an award of prejudgment interest. *See Smith–Hunter Constr. Co. v. Hopson,* 365 S.C. 125, 128–29, 616 S.E.2d 419, 421 (2005) (finding builder was entitled to prejudgment interest in action against homeowners for breach of contract, quantum meruit, and foreclosure of a mechanic's lien because the builder's costs were established by the builder's invoices at the time the homeowners breached the contract and were thus "fixed by conditions existing at the time the claim arose"). Accordingly, we affirm the circuit court on this issue.

## CONCLUSION

Based on the foregoing, the circuit court's decision is

**AFFIRMED.**

HUFF and KONDUROS, JJ., concur.