**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Blythewood Oil Co., Inc., Appellant,

v.

Shinda Singh, Five Rivers, Inc., and Singh, Inc., Respondents.

Appellate Case No. 2021-000944

———————

Appeal From Fairfield County
DeAndrea G. Benjamin, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-424
Heard September 11, 2024 – Filed December 18, 2024
Withdrawn, Substituted, and Refiled May 21, 2025

———————

**AFFIRMED**

———————

Tony R Megna, of Blythewood, for Appellant.

Linda Zeigler Jackson, of Jackson & Jackson of Columbia, for Respondents.

———————

**PER CURIAM:** Blythewood Oil appeals the circuit court's order finding it was not entitled to recover against Shinda Singh, Five Rivers, Inc., and Singh Inc. (collectively, Respondents) for nonpayment following Blythewood Oil's deliveries of gasoline to two convenience stores. Blythewood Oil argues the circuit court

erred in failing to direct a verdict on its claim for unjust enrichment because (1) Shinda admitted he formed a partnership to own and operate the two stores, (2) Shinda failed to notify Blythewood Oil of the change in store operations, and (3) the law of estoppel and agency bars Respondents' asserted defenses.  We affirm.

## I.  Partnership and Agency

Blythewood Oil argues Respondents are jointly and severally liable for payments owed for gasoline delivered to two convenience stores that Blythewood Oil alleges are owned and operated by Shinda and Kabal Singh.  In support of its position, Blythewood Oil notes Shinda's admissions that in 2007, he formed a partnership with Kabal to operate the two stores and that their partnership continued until March 2010.  Blythewood Oil further contends Respondents' failure to notify it of the alleged changes in management and his leasing of the two stores renders Shinda (or his corporate entities) liable for the unpaid invoices.  Finally, Blythewood Oil asserts there is no evidence that Shinda and Kabal's partnership operating the two stores ever ceased.  We disagree.

"A 'partnership' is an association of two or more persons to carry on as co-owners a business for profit and includes, for all purposes of the laws of this State, a registered limited liability partnership."  S.C. Code Ann. § 33-41-210 (2006).

> In determining whether a partnership exists, these rules shall apply:
>
> (1) Except as provided by § 33-41-380 persons who are not partners as to each other are not partners as to third persons;
>
> (2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profit made by the use of the property;
>
> (3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived; and

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment

    (a) as a debt by installments or otherwise,

    (b) as wages of an employee or rent to a landlord,

    (c) as an annuity to a widow or representative of a deceased partner,

    (d) as interest on a loan, though the amount of payment vary [sic] with the profits of the business or

    (e) as the consideration for the sale of the good will of a business or other property by installments or otherwise.

S.C. Code Ann. § 33-41-220 (2006). "The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business." S.C. Code Ann. § 33-41-910 (2006).

"Agency may be implied or inferred and may be proved circumstantially by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal." *Frasier v. Palmetto Homes of Florence, Inc.*, 323 S.C. 240, 244, 473 S.E.2d 865, 867 (Ct. App. 1996). "A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts." *Hodge v. UniHealth Post-Acute Care of Bamberg, LLC*, 422 S.C. 544, 565, 813 S.E.2d 292, 304 (Ct. App. 2018) (quoting *McCall v. Finley*, 294 S.C. 1, 6, 362 S.E.2d 26, 29 (Ct. App. 1987)). "[I]t is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority." *Id.* (quoting *McCall*, 294 S.C. at 6, 362 S.E.2d at 29 (alteration by court)).

Shinda formed a partnership with Kabal in 2007 to operate the two convenience stores. However, in October 2008, due to concerns about the lack of profit distributions and repeated instances of low inventory, Shinda decided to end his

involvement operating the two stores. Thus, Shinda—through his corporate entities Five Rivers, Inc. and Singh, Inc.—executed leases for the stores to Gill and Gas, LLC and Gill and Gas No. 2, LCC, two businesses operated by Gurpreet "Jessie" Singh (Kabal's son). Shinda admitted he did not provide Blythewood Oil with copies of these leases (or any other document) or otherwise inform Blythewood Oil that he was no longer involved in operating the two stores. Yet, Shinda further explained it is not customary to provide notice of such leases to vendors.

Shinda was not notified of any outstanding debt with Blythewood Oil in connection with the two convenience stores until January 2010, when he received a call from Loyalty Petroleum—the supplier for Shinda's other stores—advising him that Jessie had inquired with Loyalty Petroleum about purchasing gas. Because Shinda knew Jessie bought gasoline from Blythewood Oil, he contacted Blythewood Oil to find out why Jessie was communicating with a new vendor. After Shinda made this call, Blythewood Oil informed him that Jessie was significantly behind in his payments. Shinda testified he was surprised by the extent of the unpaid invoices because in his experience, oil jobbers do not typically allow customers to fall more than ten days behind in payment. Blythewood Oil invoices in the record confirm payment is due ten days from the issuance of an invoice.

Shinda explained that he and his son decided to meet with Blythewood Oil to find out how deep in debt Jessie was. When Shinda learned Jessie owed Blythewood Oil over $400,000, he asked why Blythewood Oil extended Jessie such a large amount of credit. According to Shinda, Larry Sharpe, Blythewood Oil's corporate director, suggested Jessie pay off any debts associated with a store he owned on Wilson Boulevard and convey that property "clear" to Blythewood Oil as payment. Goldy Singh, Shinda's son, also attended this meeting; he testified there was no discussion that Shinda might be liable for Jessie's debt.

Larry Sharpe admitted he did not notify Shinda of any issues with Jessie's payments and that Shinda contacted Blythewood Oil after learning of Jessie's communications with a potential new vendor. Sharpe further admitted Blythewood Oil did not obtain a credit application in connection with its gasoline deliveries to either of the two stores prior to 2009, despite the company's typical business practices. Sharpe testified Blythewood Oil was updating its accounting in 2009 and realized it did not have credit applications on file for the two stores; thus, it requested the applications, and Jessie executed them.

Of further significance is the lack of evidence that Shinda or the Respondent corporate entities shared in profits from the two convenience stores after 2008 or that Shinda held himself out as a partner or owner after he leased the stores to Jessie. *See* § 33-41-220 (setting out rules for determining the existence of a partnership).

Based on the foregoing, we find evidence in the record supports the circuit court's finding that Respondents are not liable to Blythewood Oil for Jessie's unpaid invoices. *See Earthscapes Unlimited, Inc. v. Ulbrich*, 390 S.C. 609, 616, 703 S.E.2d 221, 225 (2010) ("An action based on a theory of quantum meruit sounds in equity."); *Church v. McGee*, 391 S.C. 334, 342, 705 S.E.2d 481, 485 (Ct. App. 2011) ("In an equitable action tried without a jury, the appellate court can correct errors of law and may find facts in accordance with its own view of the preponderance of the evidence." (quoting *Blackmon v. Weaver*, 366 S.C. 245, 248-49, 621 S.E.2d 42, 43-44 (Ct. App. 2005))). First, although Shinda and Kabal were initially partners in operating the stores, Shinda ended his involvement with the two stores and leased the properties to Jessie's LLCs due to his growing concerns about profit distributions and dwindling inventory.

More importantly, Blythewood Oil failed to provide any actual evidence of Shinda's ongoing involvement in operating the two convenience stores after these leases were executed—or in 2009 when Jessie executed Blythewood Oil's credit applications (Credit Applications). Although Shinda admitted he paid the South Carolina Lottery Commission in 2009 for money Jessie owed, he testified that an attorney advised him to pay off this lien, even though he did not incur the debt, because he was responsible for the mortgage on the property. This payment to the Lottery Commission is insufficient to support a finding that Shinda was a partner in Jessie's businesses, and it does not render him responsible for the credit extended by Blythewood Oil in connection with Jessie's Credit Applications.

Blythewood Oil likewise failed meet its burden of proving Jessie acted as an agent of any partnership in which any Shinda was a partner. Jessie executed the 2009 Credit Applications as President of AM PM Food Mart, and there is no reference to Respondents in these documents. If any notice of a change in ownership was required, as Blythewood Oil repeatedly argues, Jessie's execution of the Credit Applications should have—at the very least—put Blythewood Oil on notice that it was no longer dealing with Shinda or the Shinda-Kabal partnership. Blythewood Oil provided no evidence that Jessie held himself out as an agent or partner of Respondents (or that he was in any way authorized to act as such) when executing the Credit Applications in which he guaranteed payment for debt incurred in

connection with the gasoline deliveries.[1]  Notably, Blythewood Oil failed to even notify Shinda of Jessie's outstanding debt, though it now claims Shinda was Jessie's partner or otherwise responsible for payment of the invoices.  Sharpe admitted Blythewood Oil did not notify Shinda of the debt, and it only discussed the debt with him after Shinda reached out to Blythewood Oil.  For these reasons, we find the circuit court properly determined Respondents were not liable for Jessie's debt and correctly declined to direct a verdict in Blythewood Oil's favor.

## II.  Defenses to Payment

Blythewood Oil next argues Respondents are equitably estopped from asserting their defenses to payment.

We note the circuit court did not address this argument in its order.  Therefore, this issue is unpreserved.  *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

## III.  Unjust Enrichment

Finally, Blythewood Oil argues the circuit court erred in finding it was not entitled to recover in quantum meruit.  Its theory appears to be that even if Respondents are not liable for Jessie's debt based upon principles of partnership law, Respondents are liable because they have been unjustly enriched.  While we agree *Jessie* has likely been unjustly enriched, Blythewood Oil provides scant support for its argument that Respondents were.

"[Q]uantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy."  *Williams Carpet Contractors, Inc. v. Skelly*, 400 S.C. 320, 325, 734 S.E.2d 177, 180 (Ct. App. 2012) (quoting *QHG of Lake City, Inc. v. McCutcheon*, 360 S.C. 196, 202, 600 S.E.2d 105, 108 (Ct. App. 2004)).  To prevail on such a claim, "a plaintiff must establish (1) he conferred a benefit upon the defendant; (2) the defendant realized that benefit; and (3) retention of the

---

[1] The Credit Applications contained a guaranty that the signer—Jessie—would guarantee payment, and Blythewood Oil continued to supply gasoline to Jessie despite the industry custom of requiring payment within ten days to continue the deliveries.  Blythewood Oil could have reasonably ascertained Shinda was not involved in the operation of the two stores—it simply never inquired.

benefit by the defendant under the circumstances make it inequitable for the defendant to retain it without paying its value." *Id*. "Implied in law or quasi-contracts are not considered contracts at all, but are akin to restitution which permits recovery of that amount the defendant has been benefitted at the expense of the plaintiff in order to preclude unjust enrichment." *Costa & Sons Constr. Co. v. Long*, 306 S.C. 465, 468 n.1, 412 S.E.2d 450, 452 n.1 (Ct. App. 1991).

In short, Blythewood Oil failed to present evidence that Respondents benefitted from the delivery of gasoline to Jessie's stores, and the record supports a finding that Shinda was merely a landlord at the time of these deliveries. Although Blythewood Oil contends otherwise, it has presented no evidence that Respondents received a benefit at any point after Jessie executed the 2009 Credit Applications. In fact, the evidence in the record demonstrates Jessie was also indebted to Respondents for past due rent.

Accordingly, the circuit court properly found Blythewood Oil was not entitled to relief in quantum meruit against Respondents.

**AFFIRMED.**

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**